## GUARDIANSHIP OF PAMELA.

Berkshire.  January 5, 1988. — March 10, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Mental Health. Incompetent Person,* Consent to medical treatment. *Guardian,* Incompetent person, Consent to medical treatment. *Probate Court,* Rehearing.

An adjudication by a District Court judge pursuant to G. L. c. 123, § 8B (*d*), that an individual was incompetent at that time to make decisions concerning her medical treatment did not bind a probate judge's determination eight months later in a proceeding subsequently brought by the Department of Mental Health for the appointment of a guardian with authority to approve continuing medical treatment under G. L. c. 201, §§ 6 (*a*) & (*c*), inasmuch as the issue in the later proceeding was the individual's current mental condition. [858]

No abuse of discretion appeared in a probate judge's continuing a proceeding for appointment of a guardian for further consideration pending determination of a question reported by him to the Appeals Court. [858-859]

PETITION filed in the Berkshire Division of the Probate and Family Court Department on May 5, 1986.

The case was heard by *Andrea F. Nuciforo,* J., and was reported by him to the Appeals Court. The Supreme Judicial Court transferred the case on its own initiative.

*Marilyn J. Schmidt,* Special Assistant Attorney General, for Department of Mental Health.

*Paul W. Cormier* for the ward.

*David Engle,* for Mental Health Legal Advisors Committee, amicus curiae, submitted a brief.

HENNESSEY, C.J. This matter is before us by way of reservation and report to the Appeals Court in accordance with G. L. c. 215, § 13 (1986 ed.). We took the case on our own motion.

On March 31, 1986, a District Court judge determined that "Pamela" was incompetent in that by reason of mental illness, she was incapable of taking care of herself. Pamela was ordered to be committed to Northampton State Hospital (Northampton). The judge, acting pursuant to c. 123, § 8B (*d*), also determined that Pamela was incapable of making informed decisions concerning medical treatment, and that her substituted judgment would be to undergo the treatment plan suggested by Northampton's superintendent.[1] On May 1, 1986, the Department of Mental Health (department), possibly in anticipation of Pamela's release from Northampton, sought appointment in the Probate Court of a guardian with authority to approve continuing the treatment under c. 201, §§ 6 (*a*) and (*c*).[2] On December 1, 1986, after a hearing, the Probate Court judge denied the department's petition. He found that Pamela had been living in a private residence for a number of months, had been taking care of her own needs, had been behaving appropriately, had been thinking relatively clearly, and had been behaving in an unremarkable fashion. The judge concluded that Pamela's history of mental illness presently was not "impair[ing] her capacity to make treatment decisions for herself."

In denying the petition, the Probate Court judge rejected the department's argument that he was bound by the District

---

[1] General Laws c. 123, § 8B (*d*) (1986 ed.), states in part that "the court shall not authorize medical treatment unless it (i) specifically finds that the person is incapable of making informed decisions concerning the proposed medical treatment, (ii) upon application of the legal substituted judgment standard, specifically finds that the patient would accept such treatment if competent, and (iii) specifically approves and authorizes a written substituted judgment treatment plan."

[2] General Laws c. 201, § 6 (*a*), addresses the procedure for appointment of a guardian. Chapter 201, § 6 (*c*) (1986 ed.), states: "No guardian so appointed shall have the authority to consent to treatment with antipsychotic medication, provided however, that the court shall authorize such treatment when it (1) specifically finds using the substituted judgment standard that the person, if competent, would consent to such treatment and (2) specifically approves and authorizes an antipsychotic medication treatment plan by its order or decree, after considering the testimony or affidavit of a licensed physician regarding such plan."

Court's earlier determination of Pamela's incompetency to make treatment decisions, as a result of c. 123, § 8B (*g*) (1986 ed.). That section provides that an adjudication of incompetency to make treatment decisions by a District Court pursuant to c. 123 is binding in a subsequent guardianship proceeding "only with respect to matters which were the subject of the district court adjudication." Stating that the department's argument presented a question of law which should be determined before he took further action, the Probate Court judge, in his order as amended, continued the matter generally and reported the following question, pursuant to G. L. c. 215, § 13: "Question: Does G.L. Chapter 123, Section 8B(*g*) curtail the Probate and Family Court from requiring evidence relative to the present mental illness of the proposed ward, for purposes of substitute [*sic*] judgment for medical treatment decisions?" .

We answer the reported question in the negative.[3] The crucial issue in the c. 201, §§ 6 (*a*) and (*c*), proceeding was whether Pamela was *currently* incapable of making informed treatment decisions. The prior District Court determination under c. 123, § 8B (*d*), established a different point: that Pamela was incapable of making such decisions on March 31, 1986. The Probate Court judge could properly, as both parties agree, consider as relevant the prior District Court judgment, but the judge clearly could consider other evidence of the current mental condition of Pamela. Indeed, in any case where the prior judgment becomes relatively remote in time, the necessity for evidence of the proposed ward's current mental condition may become more clearly imperative.

One final point is raised. Pamela and the amicus argue that the judge erred in continuing the matter generally, with allowance of interested parties to petition for further consideration, after determining that Pamela was capable of making informed

---

[3] The parties in their briefs engage in a dialogue as to which party had the burden of proof in the Probate Court proceeding. This issue was not responsive to the single question the judge reported, especially in light of the fact that the judge heard detailed evidence and made detailed findings as to Pamela's current mental condition; nor did the judge by any other ruling raise any question as to burden of proof.

medical treatment decisions. They urge that the judge should have entered a final judgment in favor of Pamela. No authority is cited for this proposition. "The power to reconsider a case resides in a court until final judgment or decree." *La Raia* v. *La Raia,* 329 Mass. 92, 93 (1952). Apparently the judge intends to enter a final judgment once the reported question has been resolved. We perceive no abuse of discretion.

The reported question is answered in the negative.

*So ordered.*