GUARDIANSHIP OF EDWARD B. WEEDON, THIRD.

Middlesex. November 6, 1990. - January 17, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Incompetent Person*, Consent to medical treatment, Right to refuse medical treatment. *Mental Health*.

This court considered the validity of a substituted judgment order authorizing forcible administration of antipsychotic drugs, issued pursuant to G. L. c. 201, § 6, even though the termination of the substituted judgment order during the course of these proceedings made the question moot, where there was a significant public interest in clarifying the requirements of substituted judgment treatment plans issued by the Probate Court. [197]

A substituted judgment treatment order dated 1984 authorizing forcible administration of antipsychotic drugs to an individual adjudicated incompetent, issued pursuant to G. L. c. 201, § 6, did not survive a Probate Court judge's determination in April, 1990, that the individual was competent. [199-200]

This court stated that, after the date of this opinion, all substituted judgment treatment orders authorizing forcible administration of medication, issued pursuant to G. L. c. 201, § 6, must provide for periodic review of the treatment plan and of the patient's circumstances in order to ensure the appropriateness of the plan and the careful protection of the patient's rights; that a termination date also must be included in a substituted judgment plan (subject, of course, to change depending on the results of the periodic review); and that timetables and procedures for periodic review and termination should be addressed by the Probate Court through its rules [200-202]

PETITION filed in the Middlesex Division of the Probate and Family Court Department on November 13, 1981.

A motion to revoke a substituted judgment order authorizing forcible antipsychotic medication, filed on December 5, 1989, was heard by *Arthur G. Coffey*, J.

The Supreme Judicial Court granted a request for direct appellate review.

*Thomas M. Hefferon* for the ward.

*Lisa A. Levy*, Assistant Attorney General, for Department of Mental Health.

*Stan Goldman & Robert D. Fleischner*, for Mental Health Legal Advisors Committee, & others, amici curiae, submitted a brief.

ABRAMS, J. At issue is the validity of a substituted judgment order dated 1984 authorizing forcible administration of antipsychotic drugs, issued pursuant to G. L. c. 201, § 6 (1988 ed.). The parties agree that the substituted judgment order terminated during the course of these proceedings[1] because a Probate and Family Court judge determined that the appellant was competent. The judge discharged the appellant's guardian, although he did not act on a motion to terminate the order. The appellee, the Department of Mental Health, asks us to dismiss the appeal as moot because the treatment order has been nullified. Weedon, however, states that, in light of his past history of hospitalizations, we should consider whether his motion to terminate the order should be allowed. Weedon asserts that the issue is likely to recur and that some guidance is needed. We conclude that there is a significant public interest in clarifying the requirements for review of substituted judgment treatment plans issued by the Probate Court. We therefore comment briefly on that issue. See *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983); *Commissioner of Correction* v. *Myers*, 379 Mass. 255, 261 (1979); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).

The substituted judgment order in question originated soon after Edward Weedon voluntarily admitted himself to McLean Hospital (McLean) in July, 1984, suffering from an exacerbation of his previously existing bipolar disease (manic depression). Weedon had been hospitalized and released on

---

[1] At oral argument, Weedon's counsel conceded that the order had terminated.

eight prior occasions due to his disease. In 1981, Weedon
was admitted to McLean and received antipsychotic drugs as
part of his treatment there.[2] Within a short time, his condi-
tion improved and he was discharged from the hospital. The
court did not appoint a permanent guardian at that time.

In September, 1984, Weedon reentered McLean. His fam-
ily petitioned the Probate Court to appoint a permanent
guardian with authority to approve forcible medication. The
court appointed Weedon's sister as guardian. See G. L.
c. 201, § 6 (1988 ed.). After an evidentiary hearing, the
judge made findings of fact and incorporated a substituted
judgment treatment plan prepared by a physician at Mc-
Lean. The plan included the forcible administration of anti-
psychotic drugs which Weedon refused to take. The judge
determined that Weedon would have decided to take the
drugs if he had been competent. Although the judge indi-
cated in his findings of fact that he anticipated that the
treatment plan would produce a remission of the illness
within approximately four to six weeks, the judge did not in-
clude in his findings either a termination date or provisions
for periodic review.

In December, 1984, Weedon was discharged from Mc-
Lean. Weedon lived at his parents' home and maintained va-
rious part-time jobs until October, 1985, when he was admit-
ted to Metropolitan State Hospital (Metropolitan). In
March, 1986, Weedon was discharged from Metropolitan.
For approximately two years following this discharge,
Weedon lived on his own and worked full time, managing to
save $10,000 out of his earnings. At the end of 1987,
Weedon suffered a relapse, and again sought voluntary hos-
pitalization. He was released after a short hospitalization. In
April, 1988, he was admitted to Arbor Hospital (Arbor), and
then transferred to Metropolitan. On November 8, 1989,
physicians at Metropolitan began treating Weedon with anti-

---

[2]At that time, his family successfully petitioned the Probate Court for
the appointment of a temporary guardian authorized to approve forcible
medication.

psychotic drugs. Weedon did not swallow all the pills he was given, and so the physicians switched to an injectable form of the drugs based on the 1984 order. On December 5, 1989, Weedon moved to revoke the 1984 order authorizing forcible administration of medication. At the hearing on this motion, the judge granted Weedon's motion for an independent psychiatric examination, but denied his motion to revoke the 1984 substituted judgment order. Weedon filed a notice of appeal from the denial of his motion.

Weedon then petitioned the Probate Court to terminate his sister's guardianship over him. After an evidentiary hearing in April, 1990, the judge found Weedon was competent to manage his affairs and discharged the guardian.[3] Counsel for Weedon requested that the judge revoke the 1984 treatment order. The judge took that request under advisement, but apparently did not act on it. After the judge refused to act on Weedon's motion for reconsideration of the order, Weedon pursued an appeal limited to the judge's refusal to vacate the treatment order. We granted Weedon's application for direct appellate review.

A person has the right to refuse to submit to invasive and potentially harmful medical treatment such as the administration of antipsychotic drugs. *Guardianship of Roe*, 383 Mass. 415, 433 (1981). This right extends to incompetent as well as competent persons "because the value of human dignity extends to both." *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 499-500 (1983), quoting *Superintendent of Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 745-746 (1977). Before a patient's decision to refuse such treatment can be overridden, a judge must determine first that the patient is incompetent to make this decision, and then what the patient would choose if he were competent, using a substituted judgment standard. *Rogers, supra* at 498, 500-501. In making a substituted judgment de-

---

[3]Weedon was discharged from Metropolitan and lived on his own for a short period. In July, 1990, Weedon had been readmitted to Metropolitan, but as of October, 1990, he had been discharged.

termination, the judge must weigh at least six distinct factors relating to the patient's preferences, beliefs, family situation, and prognosis. *Id.* at 505-506. Because these factors justifying intervention are likely to change with time, we have made clear that any substituted judgment order " 'should provide for periodic review to determine if the ward's condition and circumstances have substantially changed.' *Guardianship of Roe, supra* at 448 n.19." *Rogers, supra* at 507.[4] Legislative recognition of this same principle is embodied in the statute governing forcible medication of patients involuntarily committed to mental institutions. General Laws c. 123, § 8B (*f*) (1988 ed.), provides that an involuntary treatment order expires automatically with the expiration of the order of commitment. An initial commitment order is generally valid for six months, and subsequent commitment orders are valid for one year. G. L. c. 123, § 8 (*d*) (1988 ed.).

There is no doubt that the substituted judgment treatment order in question did not survive the Probate Court's determination in April, 1990, that Weedon was competent. This follows necessarily from our holding that "a distinct adjudication of incapacity to make treatment decisions (incompetence) must precede any determination to override patients' rights to make their own treatment decisions." *Rogers, supra* at 498. Because a judicial finding of incompetence is a necessary precondition to any substituted judgment treatment order, a subsequent finding of competence automatically terminates any substituted judgment order then in effect.

Substituted judgment treatment orders issued pursuant to G. L. c. 201, § 6, cannot remain effective indefinitely. A substituted judgment order is valid because it is based on the demands of a patient's current circumstances. Thus, we have disapproved of treatment orders based on conjecture as to

---

[4]In *Roe*, we considered the rights of a noninstitutionalized person; in *Rogers*, we addressed the rights of patients who had been involuntarily committed. In both instances, a patient's right to refuse treatment must be respected unless a court first has determined that he is incompetent, and then has made a substituted judgment decision after weighing the relevant factors.

what future circumstances may be. See *Guardianship of Linda*, 401 Mass. 783, 786-787 (1988); *Guardianship of Roe*, 383 Mass. 415, 432 (1981). Any of the factors to be weighed before authorizing forcible medication, such as the patient's mental condition, physical reaction to the drugs, family situation, or religious beliefs, may change significantly with the passage of time, thus rendering the substituted judgment determination inaccurate. Periodic review provides some insurance that a patient will not continue to be forcibly medicated pursuant to a substituted judgment order that no longer represents an accurate determination of the patient's preference were the patient competent. Thus, after the date of this opinion, all substituted judgment treatment orders must provide for periodic review of the treatment plan and of the patient's circumstances in order to ensure the appropriateness of the plan and the careful protection of the patient's rights.[5]

Periodic review, alone, however, may not suffice in all cases adequately to protect patients' rights. We conclude that, because "(1) there are 'few legitimate medical procedures which are more intrusive than the forcible injection of antipsychotic medication,' [*Roe, supra*] at 436; [and] (2) the side effects of antipsychotic drugs 'are frequently devastating and often irreversible,' [*Roe, supra*] at 438," *Rogers, supra* at 501 n.16, a termination date also must be included in a substituted judgment plan. That date, of course, may be changed depending on the results of the periodic review. We note that this requirement of a termination date lessens the disparity in treatment between patients subject to an order under G. L. c. 201, § 6, which currently has no provision for periodic review and termination, and those subject to an or-

---

[5]Neither party argues, however, that the lack of provision for periodic review does or should automatically terminate the substituted judgment order. We express no opinion as to how long an order which does not provide for either periodic review or a termination date is valid.

der under G. L. c. 123, § 8B, which effectively provides for automatic termination.[6]

Weedon and amici curiae urge us to mandate timetables and procedures for periodic review and termination. We decline to do so. We think that appropriate decisions on these matters can only be made on the basis of information from a variety of sources. Because it is essential that the Probate Court maintain its flexibility and its consequent ability to respond to the individual needs of patients, we think it may be appropriate for the time periods for review and termination to be addressed by the Probate Court through its rules. Public comment should be invited from mental health experts, lawyers, patients, and their families before timetables for periodic review and termination dates are formulated. We add that any rule which is adopted must be flexible and permit a guardian to seek review or termination sooner than the rules provide if the patient's circumstances warrant earlier action.

We remand this case to the Probate and Family Court to correct the docket by reflecting the allowance of Weedon's motion to terminate the substituted judgment plan order.

*So ordered.*

---

[6]The combined effect of G. L. c. 123, §§ 8 and 8B, is to terminate automatically an initial substituted judgment order after either six months or one year, and subsequent orders after one year. G. L. c. 123, §§ 8 (*d*), 8B (*f*). Reasons may exist to differentiate the treatment of incompetent mental patients according to their commitment status and circumstances.