## Guardianship of John Roe.

Hampshire. November 7, 1991. - January 14, 1992.

Present: Liacos, C.J., Wilkins, Abrams, Nolan, & Lynch, JJ.

*Incompetent Person*, Right to refuse medical treatment. *Mental Health. Probate Court*, Incompetent person.

In a guardianship proceeding, a Probate Court judge correctly determined that the ward, who suffers from chronic schizophrenia, was incompetent to make medical treatment decisions for himself [669-672], and that the ward's substituted judgment would be to continue treatment with the antipsychotic medication to which his condition had responded favorably, notwithstanding the drug's serious side effects [672-674].

PETITION filed in the Hampshire Division of the Probate and Family Court Department on July 31, 1987.

The case was heard by *Sean M. Dunphy*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Michael J. Serduck* for the ward.

*Beth D. Levi*, Assistant Attorney General, for Department of Mental Health.

ABRAMS, J. At issue is the correctness of an order adjudicating a ward incompetent to make medical treatment decisions for himself as well as the judge's determination that the ward's substituted judgment would be to continue treatment with antipsychotic medication. For the reasons stated in this opinion, we affirm.

*Facts.* The ward, John Roe, suffers from chronic schizophrenia. When left untreated by medication, the ward's illness manifests itself in "paranoia, suspiciousness, argumentative and combative behaviors and catatonic withdrawal." Because of his schizophrenia, the ward has been hospitalized at least fourteen times since 1970.

The ward first came before the Probate Court in September, 1987. At that time, the Department of Mental Health (department) brought a petition seeking to have a guardian appointed for the ward. The petition sought to allow the guardian authority to consent to treatment of the ward with antipsychotic medication. The judge allowed the department's petition. Under a July, 1989, order the ward began taking Stelazine, an antipsychotic medication. The judge appointed a guardian ad litem (guardian) to monitor the treatment.

The ward has responded favorably to treatment with Stelazine. He lives in the community and functions "very well." The ward lives by himself in an apartment, manages his own finances, and performs volunteer services five days a week. At the time of the hearing that is the subject of this appeal, the ward displayed no symptoms of schizophrenia. With continued use of Stelazine, the ward's prognosis is good, and his "psychotic symptoms should be controlled to the extent that he can continue to reside in the community."

By contrast, the ward's prognosis without treatment is poor. His condition probably would deteriorate to the point at which he would be unable to care for himself and "would likely require rehospitalization." The psychiatrists supervising the ward's treatment consistently have opined that without antipsychotic medication, the ward would suffer severe depression and put his health, and even his life, at risk by his resulting refusal to eat or drink.

The judge's order of July, 1989, expired on July 11, 1990. In an effort to continue treating the ward with Stelazine, the department, in June, 1990, filed a motion to extend the order.[1] A hearing on this motion was held on September 21, 1990, before the same judge who heard the initial motion. There were two witnesses. One of the ward's physicians, a

---

[1] The judge allowed two motions for interim extension of the initial order pending a hearing on the petition.

psychiatrist, testified in support of the motion, and the ward testified in opposition.[2]

The ward testified that he knew that Stelazine is prescribed for mental illness. He further observed that the medication is designed to correct a chemical imbalance in the brain. The ward acknowledged that the department sought to force him to take the medication because the department considers him to be mentally ill. The ward testified that, in his opinion, he does not suffer from a mental illness.[3] Finally, the ward said that he takes his medication only because the judge has ordered him to do so.

The ward testified that he does not want to take Stelazine because he is concerned that it causes tardive dyskinesia.[4] The ward at times experiences the slow, involuntary muscle movements characteristic of tardive dyskinesia. The judge found that these movements were "early sign[s]" of the disorder. There is evidence that tardive dyskinesia is a permanent, irreversible disorder. The ward has refused to cooperate in diagnostic testing regarding tardive dyskinesia.

[2]Although the record does not specifically so state, it is clear from the entire record that the ward was taking Stelazine at the time of the hearing.

[3]At the prior hearing on the initial motion, the ward denied that he suffers from a mental illness and further denied the value to him of the medication. The judge found that "[t]his denial and impairment of judgment are symptomatic of [the ward's] mental illness."

[4]Tardive dyskinesia is a "slow movement disorder." It "is characterized by involuntary muscle movements, often in the oral region. The associated rhythmic movements of the lips and tongue (often mimicking normal chewing, blowing, or licking motions) may be grotesque and socially objectionable, resulting in considerable shame and embarrassment to the victim . . . . Additionally, hypertrophy of the tongue and ulcerations of the mouth may occur, speech may become incomprehensible, and, in extreme cases, swallowing and breathing may become difficult. To date, tardive dyskinesia has resisted curative efforts, and its disabling manifestations may persist for years. 'There is little doubt that prolonged administration of psychoactive drugs [including Stelazine] plays a major role in the development of tardive dyskinesia'" (footnotes omitted in original). Guardianship of Roe, 383 Mass. 415, 439 (1981), quoting Plotkin, Limiting the Therapeutic Orgy: Mental Patients' Right to Refuse Treatment, 72 Nw. U.L. Rev. 461, 475-477 (1977).

Based on the medical evidence, the judge determined that
the ward is "incompetent to make medical treatment deci-
sions [for himself] due to his mental illness." Because "[h]e
denies his mental illness," the judge found, the ward "cannot
weigh the risks and benefits of treatment." Having adjudi-
cated the ward incompetent to make treatment decisions, the
judge then concluded that, were the ward competent, he
would choose to continue to use Stelazine to control his
mental illness. The judge therefore ordered that the ward's
treating physician continue to administer to him up to ten
milligrams of Stelazine daily.[5] The order was valid for one
year, until September 21, 1991.[6]

*The adjudication of incompetence.* The ward contends
that the judge erred in finding him incompetent to make a
medical decision on whether to take antipsychotic medica-
tion. The essence of the ward's position is that he demon-
strated at the hearing that he understands that the depart-
ment considers him mentally ill; that he is aware that the
purpose of ordering him to take Stelazine is to treat this ill-
ness; that he fears that the medication will cause him to suf-
fer tardive dyskinesia; and that, on balance, he prefers not to
risk experiencing this serious side effect of Stelazine. Based
on medical evidence and the ward's medical history, the
judge's determination that, because the ward does not accept

---

[5]The order also called for the court to monitor the ward's treatment.
Further, the order provided that "the ward's treating physician shall file a
written report with the [c]ourt . . . which includes but is not limited to the
following:

"1.  the types of medication(s) being administered, dosage and
frequency,
"2.  the reasons for any changes in medication(s) or dosage levels
of the medication(s) during the course of the reporting period,
"3.  any side effects which have occurred,
"4.  specific steps to monitor the side effects of the medication(s),
and
"5.  the ward's condition in general.
"6.  consideration given to, and/or plan for, establishing a drug-
free period for [the ward]."

[6]The record does not indicate what has happened since September,
1991.

that he is mentally ill, he cannot fairly "weigh the risks and benefits of treatment" was supported by the record. We therefore affirm the adjudication of incompetence.

A judge may appoint a guardian for a mentally ill person if the judge determines that the person "is incapable of taking care of himself by reason of mental illness." G. L. c. 201, § 6 (1990 ed.). See *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 496-497 (1983). A judge may adjudicate a person to be "competent to make some decisions, but not others." *Rogers* v. *Commissioner of the Dep't of Mental Health*, *supra* at 495, citing, inter alia, *Matter of Moe*, 385 Mass. 555, 567-568 (1982). The determination of incompetence to make informed treatment decisions must be based on the mentally ill person's current incapacity to make such decisions.[7] *Guardianship of Pamela*, 401 Mass. 856, 858 (1988). See G. L. c. 201, § 6 (1990 ed.).

The judge determined not that the ward is incompetent generally but rather only that he is incompetent to make informed decisions about his use of antipsychotic medication. This conclusion was supported by the record. Despite his medical history prior to taking Stelazine, the ward denies that he is mentally ill. The judge concluded that the ward did not and cannot appreciate the need to control this illness with antipsychotic medication. An informed decision about medical treatment "requires knowledge of the available [treatment] options and the risks attendant on each." *Harnish* v. *Children's Hosp. Medical Center*, 387 Mass. 152, 154 (1982), citing *Canterbury* v. *Spence*, 464 F.2d 772, 780 (D.C. Cir.), cert. denied, 409 U.S. 1064 (1972). The ward understands the risks attendant on taking Stelazine, but he

---

[7] "[A] distinct adjudication of incapacity to make treatment decisions (incompetence) must precede any determination to override patients' rights to make their own treatment decisions." *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. 489, 498 (1983), citing *Matter of Moe*, 385 Mass. 555, 567-568 (1982).

clearly does not appreciate the risks associated with refusing it.[8] The judge's determination of incompetence was not error.

The ward finally argues that the judge's recommendation that the ward's physicians consider establishing a "drug-free 'holiday' " for the ward fatally undermines the adjudication of incompetence. The purpose of such a "holiday" would be to "provide a controlled opportunity to further evaluate the need for medication, the lowest effective dosage, and the risks and benefits."[9] The ward asserts, without citation to authority or even analysis, that the judge's suggestion of a drug-free observation period calls into question his determination that the ward is incompetent. This contention is without merit.

The judge's effort to obtain more precise information does not invalidate his adjudication of incompetence. See note 5, *supra*. Rather, the judge correctly provided for "periodic review of the treatment plan and of the patient's circum-

---

[8]The ward cites two cases to support his position, neither of which avails him. First, the ward compares his decision to refuse Stelazine to a person's refusal of a lifesaving medical procedure on religious grounds. In *Norwood Hosp.* v. *Munoz*, 409 Mass. 116, 122 (1991), we upheld "the right of a *competent* individual to refuse medical treatment" on religious grounds (emphasis in original). Unlike the present matter, there was in that case no question of the patient's competence. Second, the ward directs our attention to *Guardianship of Linda*, 401 Mass. 783 (1988), in which we upheld a Probate Court judge's adjudication of incompetence because the patient did not "understand the nature of [antipsychotic] drugs." *Id.* at 785. The ward notes that, unlike the ward in that case, he understands the nature of antipsychotic drugs. That a person may be judged incompetent because the person does not understand the nature of the proposed medication, however, in no way suggests that a demonstrated understanding of a drug's effect precludes a determination of incompetence.

[9]The ward urges us not to consider the judge's further findings of fact because the judge filed them after entry of the order. The judge's supplementary findings are further elucidations of the initial findings and are utterly consistent with them. They represent no substantive change from the original findings. We therefore consider them. Moreover, even if we did not consider them, the judge's recommendation that a drug-free observation period be established in no way indicts his adjudication of the ward as incompetent.

stances."[10] See *Guardianship of Weedon*, 409 Mass. 196, 201 (1991). The judge recognized that "physical reaction to the drugs . . . may change significantly with the passage of time, thus rendering the substituted judgment determination inaccurate." *Id.* The proposed "drug-free 'holiday' " is an attempt by the judge to determine whether the ward's need for the drug and his physical reaction to it have changed due to the passage of time.

*The substituted judgment determination.* "A person has the right to refuse to submit to invasive and potentially harmful medical treatment such as the administration of antipsychotic drugs." *Guardianship of Weedon*, 409 Mass. 196, 199 (1991), citing *Guardianship of Roe*, 383 Mass. 415, 433 (1981). "This right extends to incompetent as well as competent persons 'because the value of human dignity extends to both.' " *Id.*, quoting *Rogers* v. *Commissioner of the Dep't of Mental Health*, *supra* at 499-500. See *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 745-746 (1977). See *Matter of Moe*, *supra* at 565. If a mentally ill patient has been deemed to be incompetent to make treatment decisions for himself or herself,[11] a judge must determine "what the patient would choose if he were competent." *Guardianship of Weedon*, *supra* at 199. *Superintendent of Belchertown State Sch.* v. *Saikewicz*, *supra* at 752-753. In this way, the judge accords "to incompetent persons the same right to choose or reject treatment that is accorded to competent persons by the law of consent." *Matter of Hier*, 18

---

. [10]In addition to his recommendation of a "drug-free 'holiday,' " the judge included in his order a number of provisions for periodic review. The order requires the ward's treating physician to file a quarterly treatment report with the Probate Court, with copies to the ward's counsel and the guardian. In addition, the order provides that any change in treatment must be justified in writing within fourteen days of such change. See note 5 *supra*.

[11]The adjudication of incompetence is a necessary prerequisite to the use of the substituted judgment inquiry. See note 7, *supra*. See also *Guardianship of Weedon*, 409 Mass. 196, 199 (1991); *Guardianship of Roe*, 383 Mass. 415, 435-438 (1981); *Superintendent of Belchertown State Sch.* v. *Saikewicz*, 373 Mass. 728, 750-755 (1977).

Mass. App. Ct. 200, 207 (1984), citing *Superintendent of Belchertown State Sch.* v. *Saikewicz, supra* at 742. The substituted judgment determination is the means by which the judge determines what the incompetent person would choose if he or she were competent. See *Guardianship of Weedon, supra* at 199; *Matter of Moe, supra* at 565; *Superintendent of Belchertown State Sch.* v. *Saikewicz, supra* at 742.

In a substituted judgment proceeding, the "court dons 'the mental mantle of the incompetent' and substitutes itself as nearly as possible for the individual in the decision-making process. . . . [T]he court does not decide what is necessarily the best decision but rather what decision would be made by the incompetent person if he or she were competent." (Citations omitted.) *Matter of Moe, supra* at 565. See *Superintendent of Belchertown State Sch.* v. *Saikewicz, supra* at 752. In order to do this, the judge assesses several factors: the ward's expressed preferences regarding treatment; the ward's religious convictions; the impact on the ward's family; the probability of adverse side effects; and the prognosis with and without treatment. See *Rogers* v. *Commissioner of the Dep't of Mental Health, supra* at 505-506; *Brophy* v. *New England Sinai Hosp.*, 398 Mass. 417, 421 n.4 (1986); *Guardianship of Roe, supra* at 444. The court may also "review any other factors which appear [to be] relevant." *Rogers* v. *Commissioner of the Dep't of Mental Health, supra* at 506.

The judge weighed the relevant factors and concluded that the ward, if competent, would choose to continue taking Stelazine.[12] The judge noted that the ward has expressed a preference not to take Stelazine and that he uses the medication only because he is under a court order to do so. Even though the ward is incompetent, his preference is "entitled to serious consideration." *Guardianship of Linda*, 401 Mass. 783, 786 (1988), quoting *Guardianship of Roe, supra* at 445. The

---

[12]The judge found, and the parties agreed, that the ward has no religious objections to the use of antipsychotic medication. The parties also concurred that there are no family members whose interests must be considered.

judge also found, however, that, because of his mental illness, the ward's preference "is not based upon a reasoned assessment of his condition or treatment needs."

The judge also found that the use of Stelazine can involve serious side effects. These include tardive dyskinesia, "the early sign[s]" of which the ward already manifests, and extrapyramidal symptoms. Against this, the judge balanced the ward's prognosis with and without medication. With medication, the judge found, the ward's schizophrenia "should be controlled to the extent that he can continue to reside in the community." Without Stelazine, however, the ward's "condition would likely deteriorate, resulting in an increase in paranoid and aggressive behaviors as well as in an inability to care for himself. He would likely require rehospitalization."

The ward also contends that the judge's proposal of a supervised, drug-free "holiday" undermines the judge's finding that the ward's prognosis without medication is poor. This argument is without merit. As discussed above, the judge's suggestion of a drug-free "holiday" merely demonstrates the judge's recognition of the importance of obtaining current information through continuing review. The supervised withdrawal from drugs essentially is an experiment designed to provide both the ward's physicians and the judge with more precise information about the ward's mental illness and the means of treating it effectively. The suggested "holiday" is therefore entirely consistent with the judge's substituted judgment determination.

The determination of incompetence and the substituted judgment determination are affirmed.

*So ordered.*