Greco, J.
This is an appeal from orders of the Lawrence Division of the District Court Department committing the appellant to a mental health facility pursuant to G.Lc. 123, §8, and authorizing the appellant’s treating physician to administer elec-troconvulsive therapy (“ECT”) and antipsychotic drugs pursuant to G.L.c. 123, §8B.
The trial judge made detailed findings of fact which indicated that the appellant was a thirty-two year old female with two children. Her husband was incarcerated. On January 4, 1995, a month before the hearing of the petitions in this case, the appellant was admitted to a hospital because of a drug overdose, and remained in the intensive care unit in a coma for eight days. This was her third hospitalization within a year as a result of suicide attempts. The appellant had psychiatric hospitalizations in 1989 and 1990. During these various hospitalizations, she was diagnosed as suffering from major depression and having a dependent personality disorder. After her second hospitalization in 1994 (immediately prior to the one which resulted in the present G.L.c. 123, §§7, 8 petitions), she was “on out-patient therapy with medication... without apparent success.”
Upon discharge from the intensive care unit on January 17,1995, the appellant agreed to a voluntary commitment pursuant to G.L.c. 123, §10. While so committed, she could not identify any stress factors in her life, denied any suicidal ide-ation, and was unhappy with her doctor. She would become “severely depressed” and “angry.” She did not find that her family was supportive. On January 24,1995, after the issue was broached by her treating psychiatrist, the appellant indicated that “she did not want ECT but... agreed that she needed a longer hospitalization because of her depression and was cooperative with staff.” The next day, she refused the proposed ECT treatment plan without giving a reason. On January 26, 1995, she recognized that she was getting worse and needed help. She agreed to *126 ECT the next day. However, her attorney insisted on obtaining a second opinion as to the need for ECT. The doctor consulted for that opinion agreed that ECT was “clearly indicated.” On the advice of her attorney, however, the appellant decided not to undergo ECT and to await the results of the G.L.c. 123, §8B hearing. During the same period, she was also “receiving pressure from her mother and brother not to accept ECT.”
The hearing was held on February 7,1995. While the matter was under advisement, the court allowed the appellant’s motion for an independent examination. After such examination, further evidence was presented to the court on February 28, 1995. Between these two hearing dates, the appellant was uncooperative with her treating psychiatrist (Dr. Dalby), verbalized “feelings of anxiety,” was “abusive,” “angry” and “unapproachable” to hospital staff, and was “continually ... somewhat depressed.”
Two doctors (Dr. Dalby and Dr. Rabinowitz) concluded that the appellant was mentally ill. Although Dr. Rabinowitz did not find her to be suicidal, the court concurred with Dr. Dalby’s assessment that the appellant’s discharge from the hospital would create “a substantial risk of harm to herself as manifested by evidence of threats of, or attempts at, suicide or serious bodily harm.” The court also found, based on Dr. Dalby’s opinion, that there was no less restrictive alternative to the hospitalization proposed for the appellant in view of the fact that when previously treated in a less restrictive setting, she “ended up in the hospital after serious attempts to cause serious physical harm to herself.”
On the G.L.c. 123, §8 issue of competence, the court’s ultimate finding stated:
The respondent does not have the present ability to make informed decisions regarding her psychiatric treatment, including but not limited to, ECT, as shown by the following facts:
a. The patient denies that she is presently ill,
b. The patient does not understand the nature of her illness,
c. The patient does not understand the risks of nontreatment,
d. The patient’s delusions and mental illness are persistent and impair her judgment.
The only additional subsidiary finding made by the court, however, was that Dr. Rabinowitz had found that the appellant was improving with the administration of the drug, prozac. Dr. Rabinowitz concluded that “she was not in any immediate danger to herself and was competent.”
The balance of the court’s subsidiary findings of fact dealt with the advisability of ECT over the use of antipsychotic drugs. While Dr. Rabinowitz was of the opinion that ECT was “over-kill,” the court accepted Dalby’s recommendation for ECT. The court found that Dalby was an expert in the administration of ECT, that outpatient psychotherapy and medication had been unsuccessful in the appellants case, and that ECT had been effective in cases like hers. Also considered was the conclusion of the doctor who had given a second opinion in January, 1995 that ECT was “clearly indicated.”
1. Appellant’s counsel informed this Division at oral argument that the appellant was no longer hospitalized and that ECT had, in fact, never been administered. We are unable to consider the appellee’s position on either the issue of mootness, or the substantive questions herein, as the appellee neither filed a brief, nor appeared at oral argument. In any event, we have elected to decide this appeal on its merits because the types of issues presented in this case are “capable of repetition, yet evading review.” Superintendent of Worcester State Hospital v. Hagberg, 374 Mass. 271, 272 (1978). See also, Guardianship of Weedon, 409 Mass. 196, 197 (1991); *127 Thompson v. Commonwealth, 386 Mass. 811, 813 n.2 (1982). Moreover, a prior commitment and finding of incompetence may be relevant in any future proceedings involving the appellant.
2. The trial court found beyond a reasonable doubt that the appellant was mentally ill, that her discharge from the hospital would create a likelihood of serious harm, and that there was no less restrictive alternative to the proposed commitment. It is clear from these findings that the court employed the appropriate standard in its G.L.c. 123, §8 decision. See Commonwealth v. Nassar, 380 Mass. 908, 912 (1980); Superintendent of Worcester State Hospital v. Hagberg, supra at 275-277. Moreover, the court’s findings were amply supported by incontrovertible evidence of the appellant’s mental illness; by her failure to have responded in the past to outpatient psychotherapy and medication; and by her repeated and serious suicide attempts which the court found “could not be dismissed as gestures.” The last of these attempts was “virtually fatal,” resulting in her hospitalization and comatose condition for eight days. The appellant admitted that on that occasion “she did in fact plan to kill herself.” There was no error, therefore, in the court’s G.L.c. 123, §8 order.
3. The court’s G.L.c. 123, §8 commitment order was not determinative of the second petition before the court for authorization to administer electroconvulsive therapy (“ECT’) §. G.L.c. 123, §8B. In such a proceeding, “a distinct adjudication of incapacity to make treatment decisions (incompetence) must precede any determination to override patients’ rights to make their own treatment decisions.” Rogers v. Commissioner of Dept. of Mental Health, 390 Mass. 489, 498 (1983). A person cannot be deemed incompetent to “manage ... her affairs ... solely by reason of [her] commitment in any capacity ... to any public or private facility.” G.L.c. 123, §24. “[A] mental patient has the right to make treatment decisions and does not lose that right until... adjudicated incompetent by a judge ...” Rogers v. Commissioner of Dept. of Mental Health, supra at 497.
The trial court found herein that the appellant was incompetent, stating that she did not “have the present ability to make informed decisions.” Although findings of fact will not be reversed unless clearly erroneous, Dist./Mun. Cts. R. Civ. P., Rule 52 (a), “where a judge’s ultimate findings are inconsistent with his subsidiary findings,” the ultimate findings must be set aside by a reviewing court. Simon v. Weymouth Agricultural & Industrial Society, 389 Mass. 146, 148-149 (1983).
The trial court based its ultimate finding of incompetence on the facts that the appellant denied she was ill and did not understand the nature of her illness or the risks of non-treatment, and that her “delusions and mental illness [were] persistent and impair [ed] her judgment.” These findings are inconsistent, however, with the subsidiary findings of the court. The latter indicate that the appellant felt in January. 1995 that “she was not getting the medical treatment that she needed.” While she did not want ECT and could not give a reason for not wanting it, “she agreed that she needed a longer hospitalization because of her depression.” On January 26,1995, she “stated that she was not getting better, that she was getting worse and [that] she [knew] that she need[ed] help.” The next day, she agreed to have ECT, stating that she “just wantfed] something to help.” Although she subsequently changed her mind and became uncooperative and hostile to hospital staff, her decision to reject ECT appears to have been based on the advice of legal counsel and “pressure” from her family. Moreover, the court’s subsidiary findings are devoid of any medical opinion that she was incompetent. While the court referred to a note by a Dr. DeNapoli to the effect that the appellant had “ [p] oor insight into her past self-destructive behavior ... [had] [p]oor judgment... [and was] [u]nwill-ing to engage in any meaningful discussion of her inner feeling,” the only opinion on competence reflected in the court’s findings was that of Dr. Rabinowitz who believed that the appellant was competent. Although Dr. Dalby strongly and persistently advocated the administration of ECT, he appears to have offered no opinion *128 as to the appellant’s competence. In sum, therefore, the court was presented with a patient who knew that she was ill and needed help, but who did not want ECT Her decision was consistent with the advice of her attorney, the wishes of her family, and the opinion of Dr. Rabinowitz that ECT was “over-kill.” On this record, the court’s finding of incompetence was not warranted.
Having concluded that the trial court’s finding of incompetence cannot stand, we need not consider the factors relevant to the court’s substituted judgment determination.[2]
The court’s G.L.c. 123, §§7, 8 order of commitment is hereby affirmed. The court’s order authorizing the administration of electroconvulsive therapy pursuant to G.L.c. 123, §8B is hereby reversed and vacated.
So ordered.

While Rogers v. Commissioner of Dept. of Mental Health, supra, involved authorization for treatment with antipsychotic medications, authorization may also be granted under G.L.c. 123, §8B for “such other medical treatment as may be necessary for the treatment of mental illness.” Thus, as noted in the Draft of proposed District Court Standards for “Proceedings for the Authorization of Medical Treatment for Mental Illness,” a Section 8B petition “requesting authorization for elec-troconvulsive therapy would [also] require a substituted judgment decision.” See Draft Standard 1:06. The Draft also lists the following factors for the court to consider in deciding whether to authorize ECT: “(1) the intrusiveness of the proposed treatment, (2) the possibility of adverse side effects, (3) the absence of an emergency, (4) the nature and extent of prior judicial involvement, and (5) the likelihood of conflicting interest.” In view of the requirement in Section 8B that treatment other than with antipsychotic medications be “necessary” and the concern in the Draft with the existence of an “emergency,” it would appear that before ECT may be authorized, the petitioner would be obligated to establish that the patient could not be adequately treated with medications or other alternatives, and that the patient specifically required the more intrusive intervention of ECT.