## GUARDIANSHIP OF ERMA.

Middlesex. February 10, 2011. - May 25, 2011.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, & DUFFLY, JJ.

*Moot Question. Practice, Civil,* Moot case, Guardianship proceeding. *Notice. Guardian,* Consent to medical treatment. *Incompetent Person,* Consent to medical treatment. *Rules of Civil Procedure.*

The expiration of a substituted judgment treatment order entered by a probate judge rendered moot an appeal therefrom. [804-805]
Statement that under Mass. R. Civ. P. 6 (c), 365 Mass. 747 (1974), a party filing a motion for entry of a substituted judgment treatment order must provide all other parties with at least seven days' notice through service of a copy of the motion on them, and must give the same notice, through service, of every affidavit that will be filed in support of the motion. [805-806]

PETITION for guardianship filed in the Middlesex Division of the Probate and Family Court Department on October 8, 2002.

Motions to intervene and to reinstate a substituted judgment treatment order, filed on February 13, 2009, were heard by *Spencer M. Kagan,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alice Whitehill Wiseberg* for the ward.

*William W. Porter,* Assistant Attorney General (*Kiernan E. Joliat,* Assistant Attorney General, with him) for Department of Mental Health.

The following submitted briefs for amici curiae:

*Kristen M. Lambert & Ellen M. DiPaola* for Massachusetts Guardianship Association.

*Marcia Boumil, Cristina Freitas, & Debbie Freitas* for Comprehensive Family Evaluation Center, Tufts Medical Center.

*Jennifer Honig, Miriam H. Ruttenberg, William Landers, Frank J. Laski, & Robert D. Fleischner* for Mental Health Legal Advisors Committee & another.

BOTSFORD, J. The subject of the present appeal is an order is-
sued by a judge in the Probate and Family Court (Probate Court),
authorizing the involuntary administration of antipsychotic
medication (substituted judgment treatment order[1]) to a men-
tally ill woman under guardianship, whom we shall call Erma.
The order was issued in February, 2009, and has expired; for
that and additional reasons, this appeal is moot. However, we
discuss one issue that is likely to recur concerning the notice
requirements applicable to motions seeking substituted judg-
ment treatment orders.

*Background.* Erma is a woman approximately fifty years old.
She has been diagnosed with a mental illness that severely
impairs thought processes and the ability to recognize reality.
She has a long history of refusing antipsychotic medications
and has been hospitalized in connection with her mental illness
approximately thirty-two times since 1991. The present guardian-
ship proceeding was commenced in 2002, and in 2003, Erma's
husband was appointed as her permanent guardian pursuant to
G. L. c. 201, § 6. He continues to serve in that capacity.

Between 2003 and 2006, several substituted judgment treat-
ment orders and accompanying treatment plans have been is-
sued by Probate Court judges.[2] One such order was issued on
February 23, 2006, and provided for an annual review (to be
held February 23, 2007). But in November, 2006, Erma was

---

[1]Such an order is often referred to as a *"Rogers"* order. See *Rogers* v. *Com-
missioner of the Dep't of Mental Health*, 390 Mass. 489 (1983). We use a
more descriptive reference in this opinion.

[2]An order appointing a guardian for a mentally ill person does not by itself
authorize the guardian to consent to the administration of antipsychotic medica-
tion to the ward; a separate order for this purpose, one that employs a substituted
judgment standard, had been held to be necessary under our case law and now
by statute. *Guardianship of Roe*, 383 Mass. 415, 433 & n.9 (1981). See G. L.
c. 201, § 6 (*c*). See also G. L. c. 190B, § 5-306A, inserted by St. 2008,
c. 521, § 9 (effective date July 1, 2009). (See discussion of the new statute at
Part 1, *infra.*) See generally *Guardianship of Weedon*, 409 Mass. 196, 199-200
(1991):

> "A person has the right to refuse to submit to invasive and potentially
> harmful medical treatment such as the administration of antipsychotic
> drugs. *Guardianship of Roe*, [*supra* at 433]. This right extends to
> incompetent as well as competent persons 'because the value of human
> dignity extends to both.' *Rogers* v. *Commissioner of the Dep't of Mental
> Health*, 390 Mass. 489, 499-500 (1983), quoting *Superintendent of*

hospitalized for a serious leg injury she sustained in an automobile accident. She was transferred to the hospital's psychiatric unit, and thereafter, a judge in the District Court ordered Erma to be committed to a facility[3] pursuant to G. L. c. 123, §§ 7 and 8, and further ordered that she be treated with antipsychotic medication under G. L. c. 123, § 8B. In May of 2007, Erma was transferred to a State hospital; the District Court orders just described remained in effect. It appears that in light of these events, the review in the present case of the February, 2006, substituted judgment treatment order that was scheduled for February 23, 2007, did not take place, and the order lapsed.

On February 2, 2009, Erma was discharged from the State hospital, after a District Court judge denied a petition filed by the Department of Mental Health (department) to continue her commitment. Meanwhile, in this case, the department served on the parties a motion to intervene and a separate motion to "reinstate" the previous substituted judgment treatment order and to "update" the treatment plan. On February 13, 2009, a Probate Court judge held a hearing on the two motions. Erma and her counsel attended the hearing, as did her guardian. At the hearing, the department filed a clinician's affidavit addressing Erma's competency and a proposed treatment plan (clinician's affidavit), and a medical certificate, both completed by a psychiatric nurse practitioner who had been treating Erma at the State hospital since January, 2008. The proposed treatment plan included two provisions for treatment with injectable antipsychotic medication. Erma objected to both of the department's

---

> *Belchertown State School* v. *Saikewicz*, 373 Mass. 728, 745-746 (1977). Before a patient's decision to refuse such treatment can be overridden, a judge must determine first that the patient is incompetent to make this decision, and then what the patient would choose if he were competent, using a substituted judgment standard. *Rogers*, *supra* at 498, 500-501. In making a substituted judgment determination, the judge must weigh at least six distinct factors relating to the patient's preferences, beliefs, family situation, and prognosis. *Id.* at 505-506."

An order authorizing the administration of antipsychotic medication (substituted judgment treatment order) must contain a provision for periodic review and also a termination date. See *id.* at 201. See also G. L. c. 190B, § 5-306A (*c*).

[3]"Facility" is defined as "a public or private facility for the care and treatment of mentally ill persons, except for the Bridgewater State Hospital." G. L. c. 123, § 1.

motions, asserting she was taking oral antipsychotic medication while in the community, and objecting in particular to treatment with injectable antipsychotic medication.

On February 17, 2009, the Probate Court judge issued the substituted judgment treatment order that is at issue before us. The order approved the department's treatment plan authorizing injection of antipsychotic medication and set a review date and alternative expiration date of April 17, 2010. Erma thereafter filed a motion for reconsideration of the order and treatment plan, which was denied. She filed a timely appeal from the substituted judgment treatment order in the Appeals Court, and we transferred the case to this court on our own motion.[4]

*Discussion.* 1. *Mootness.* The substituted judgment treatment order challenged by Erma had a review and termination date of April 17, 2010. It was not reviewed in April of 2010, and accordingly, it expired on the termination date. The order's termination moots this appeal, and the mootness is underscored by two other events. First, in the time since this appeal was filed, Erma has been the subject of separate commitment proceedings in the District Court under G. L. c. 123, §§ 7 and 8, and in connection with those proceedings, an order authorizing treatment with antipsychotic medication under G. L. c. 123, § 8B, is currently in effect.[5] Second, on July 1, 2009, provisions of the Uniform Probate Code (UPC) governing guardianship of incapacitated persons went into effect, see G. L. c. 190B, art. 5, §§ 5-301 et seq., inserted by St. 2008, c. 521, §§ 9, 44; the statute under which the challenged substituted judgment treatment order was issued, G. L. c. 201, § 6, was repealed as of that date. See St. 2008, c. 521, § 21. Nevertheless, as stated at the outset, we comment briefly on an issue of notice relating to motions for substituted judgment treatment orders that has public importance, has been fully briefed and argued, and may recur under the UPC as well as other statutes that authorize other court depart-

---

[4]We acknowledge the amicus briefs filed by the Mental Health Legal Advisors Committee and the Center for Public Representation, Tufts Medical Center's Comprehensive Family Evaluation Center, and the Massachusetts Guardianship Association.

[5]We are informed that Erma has appealed from the District Court judge's substituted judgment treatment order described in the text. That appeal is not before us.

ments to issue such orders.[6] See *Smith* v. *McDonald*, 458 Mass. 540, 543 n.4 (2010); *Wellesley College* v. *Attorney Gen.*, 313 Mass. 722, 731 (1943).[7]

2. *Notice*. The department served its motions to intervene and for a reinstated or updated substituted judgment treatment order on Erma's counsel on or about January 23, 2009. There is no indication in the record, however, that the department served the clinician's affidavit and medical certificate on Erma's counsel at any time before the actual motion hearing.[8] Erma argues the department's failure to serve these documents at least seven days prior to the hearing violated the notice requirements of G. L. c. 201, § 7, as well as fundamental principles of due process. We agree with the position now taken by the depart-

---

[6] See, e.g., G. L. c. 123, § 8B. See also *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. at 499, and statutes cited (noting that "[c]ompetency and substituted-judgment determinations may take place" in Probate and Family Court, Superior Court, and Juvenile Court).

[7] The parties, and amici, argue at length in their respective briefs about the circumstances in which G. L. c. 201, § 6 (*e*) (one of the guardianship statutes now repealed, but in effect at the time the order entered), constitutional principles of due process, or both, permit a judge to base a substituted judgment determination "exclusively upon affidavits and other documentary evidence." *Id.* More particularly, Erma argues that this statute and due process prohibited the Probate Court judge from basing his substituted judgment decision "exclusively" on the affidavit (clinician's affidavit) and medical certificate prepared by the nurse practitioner who had treated Erma, and effectively required the Department of Mental Health (department) to call the nurse practitioner to testify as a witness, subject to cross-examination. Although G. L. c. 190B, § 5-306A (*d*), the section of the Uniform Probate Code that corresponds to G. L. c. 201, § 6 (*e*), contains the same language about basing findings "exclusively upon affidavits and other documentary evidence," we do not consider the meaning of that language here, principally because it is not clear, as a factual matter, that the Probate Court judge did base his findings "exclusively" on the clinician's affidavit and the medical certificate. In a case that is moot, we see no need to reach out to interpret a phrase in a now-repealed statute that on the facts of the case may not have applied at all, simply because the same phrase appears in a different statute that is currently in effect. The mootness of this case also dissuades us from reaching the constitutional issue raised by Erma, namely, whether the nurse's absence from the hearing violated Erma's right to due process. See *Martin* v. *Commonwealth*, 452 Mass. 1028, 1029 (2008) ("We are particularly reluctant to decide a moot issue where, as in this case, the issue is of constitutional dimension").

[8] The fact that both the clinician's affidavit and the medical certificate are dated February 11, 2009, supports this conclusion, given that the motion hearing took place on February 13, 2009.

ment that quite apart from the Constitution or statutory provisions,[9] under Mass. R. Civ. P. 6 (c), 365 Mass. 747 (1974),[10] a party filing a motion for entry of a substituted judgment treatment order must provide all other parties with at least seven days' notice through service of a copy of the motion on them, and must give the same notice, through service, of every affidavit that will be filed in support of the motion.[11]

*Appeal dismissed.*

---

[9]The old and new statutes directly governing motions for substituted judgment treatment orders do not address notice requirements for motions seeking such orders, providing only that a hearing on the motion "shall be held as soon as is practicable." G. L. c. 201, § 6 (c). G. L. c. 190B, § 5-306A (a). See *Rogers* v. *Commissioner of the Dep't of Mental Health*, 390 Mass. at 504, quoting *Matter of Moe*, 385 Mass. 555, 566 (1982) (parties "must be given adequate notice of the proceedings").

[10]Rule 6 (c) of the Massachusetts Rules of Civil Procedure, 365 Mass. 747 (1974), provides:

> "A written motion, other than one which may be heard ex parte, and notice of the hearing thereof shall be served not later than [seven] days before the time specified for the hearing, unless a different period is fixed by these rules or by order of the court. Such an order may for cause shown be made on ex parte application. When a motion is supported by affidavit, the affidavit shall be served with the motion; and, except as otherwise provided in [Mass. R. Civ. P. 59 (c), 365 Mass. 827 (1974)], opposing affidavits may be served not later than [one] day before the hearing, unless the court permits them to be served at some other time."

[11]The department appears to consider the medical certificate equivalent to an affidavit and therefore also subject to the requirement in rule 6 (c) of service on opposing parties along with the motion. We consider this a reasonable and appropriate construction of the rule in the context of motions for substituted judgment treatment orders.