NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-946

GUARDIANSHIP OF R.L.A.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Probate and Family Court found the respondent, R.L.A., to be an incapacitated person, and entered an amended decree and order pursuant to G. L. c. 190B, § 5-306 (b), appointing a guardian to, among other things, monitor the administration of R.L.A.'s antipsychotic medications.  R.L.A. argues that the judge erred by authorizing a treatment plan that allowed for the administration of Thorazine, adopting ("wholesale") the petitioner's proposed findings, and closing the court room during the proceedings.  We affirm.

Background.  On August 27, 2021, R.L.A.'s mother (petitioner) filed a petition for appointment of a guardian for an incapacitated person in the Probate and Family Court.  The petitioner was appointed as temporary guardian on September 24,

2021.  R.L.A.'s counsel filed an objection to the petition on September 27, 2021.[1]

A guardianship trial was held on September 15 and 22, 2022. At the time of trial, R.L.A. was forty-six years old.  She had been diagnosed with bipolar disorder with psychotic symptoms and mania.  She additionally suffered from psychotic delusions. R.L.A. was prescribed and taking three antipsychotic medications, one of which was Thorazine.  R.L.A. did not want to take the full dose of Thorazine because it upset her stomach.

At trial, the petitioner called one witness, Dr. Gyula Bokor, an attending psychiatrist at the Taunton State Hospital. Dr. Bokor explained that the low dose of Thorazine that R.L.A. was taking was insufficient to "stabilize" her multiple delusions and disorganized thinking.

Following the trial, the judge found that R.L.A. was an incapacitated person.  As a result, the judge entered a decree of appointment of a guardian.  The judge also adopted the petitioner's proposed treatment plan with certain amendments.

---

[1] On April 12, 2022, a judge of the District Court committed the respondent to the Taunton State Hospital pursuant to G. L. c. 123, § 16 (b).  The court also authorized treatment with antipsychotic medication pursuant to G. L. c. 123, § 8 (b).

Discussion. 1. Substituted judgment treatment order and "wholesale" adoption of judge's findings.[2] To meet the standard for appointment of a guardian and issuance of a substituted treatment order, the petitioner was required to prove by a preponderance of the evidence that R.L.A. was an "incapacitated person" within the meaning of G. L. c. 190B, § 5-101 (9), and that, if she were not incapacitated, R.L.A. would choose to be treated by Thorazine. See Guardianship of A.R., 99 Mass. App. Ct. 349, 353, 358 (2021); G. L. c. 190B, §§ 1-109 and 5-306A. We review the judge's rulings for abuse of discretion or other error of law. See Guardianship of Linda, 401 Mass. 783, 785-786 (1988). "[A] judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made a clear error of judgment in weighing the factors relevant to the decision, such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

_____

[2] The decree of guardianship was due to expire on September 15, 2023. The treatment plan challenged by R.L.A. had a review and termination date of March 21, 2023. As the decree and order in question expired more than a year ago and no updated decrees or orders have been presented to us, R.L.A.'s appellate challenges, even if otherwise properly presented, are moot. See Guardianship of Erma, 459 Mass. 801, 804 (2011). Even if the issues were not moot, there is no merit to R.L.A.'s argument that the evidence was insufficient to establish that she was not competent or that if competent, she would agree to be treated with Thorazine.

3

The evidence at trial was sufficient to establish R.L.A.'s inability to make her own medical decisions. A patient may be deemed "incompetent to make a medical decision" if they do "not accept that [they] [are] mentally ill" or "cannot fairly weigh the risks and benefits of treatment" (quotation omitted). Guardianship of Roe, 411 Mass. 666, 669-670 (1992). At trial, R.L.A. testified: "I don't consider myself deluded." Dr. Bokor also testified that R.L.A. "doesn't want to take mood stabilizers . . . because she said she doesn't need it[.]" Based on this testimony, the judge properly concluded that R.L.A. did not accept her diagnosis and therefore could not determine for herself the risks and benefits of treatment.

R.L.A. argues that the evidence was insufficient to support the judge's finding that, if not incapacitated, R.L.A. would consent to the treatment with Thorazine. The relevant factors a judge must consider in making a substituted judgment determination include "(1) a person's expressed preferences; (2) [her] religious convictions; (3) the impact on [her] family; (4) the probability of adverse side effects from treatment; (5) [her] prognosis with treatment; and (6) [her] prognosis without treatment." Guardianship of A.R., 99 Mass. App. Ct. at 358. See Guardianship of Roe, 383 Mass. 415, 444 (1981).

4

In reviewing the judge's determination that R.L.A. would, if not incapacitated, consent to treatment by antipsychotic medication, "we must consider whether the facts on the record support the proposition that [R.L.A.] [her]self would have made the decision if [s]he were competent" (quotation and citation omitted). Guardianship of Brandon, 424 Mass. 482, 488 (1997). We accept the judge's findings of fact unless clearly erroneous, but we review de novo the legal conclusions drawn from those facts. See id.

The judge applied the factors set forth above in reaching her conclusion that R.L.A., if not incapacitated, would consent to taking the Thorazine. Dr. Bokor testified that the Thorazine would aid R.L.A.'s disorganized thinking and delusions, but since R.L.A. had not accepted more than a very low dose, she was still having unusual thoughts, beliefs, and delusions.

R.L.A. complained to Dr. Bokor that Thorazine causes her to feel sedated and have an upset stomach. Taking into consideration R.L.A.'s concerns with Thorazine's side effects, the judge amended the treatment plan by reducing the doctor's requested dosage of Thorazine in half.

The judge further concluded that R.L.A.'s prognosis without medication would be "[d]eterioration over time," whereas with medication, R.L.A.'s delusions and mania would decrease.

5

Accordingly, it was not an abuse of discretion to give greater weight to evidence of the efficacy of Thorazine in treating R.L.A's mental health or to determine that R.L.A. -- if competent -- would choose a medication that lessened her symptoms of psychosis. See Guardianship of Roe, 383 Mass. at 447-448 (accepting proposition that "the greater the likelihood" of favorable prognosis, "the more likely an individual would be to submit to intrusive treatment").

R.L.A. next argues that the judge's adoption of the petitioner's findings of fact shows that she "did not pay close attention to the evidence." This assertion is belied by the record. There was testimony about R.L.A.'s opioid addiction and inappropriate behaviors, and a statement that R.L.A.'s family supported her treatment. In addition, there was expert testimony that the medications were not properly managing R.L.A.'s symptoms.[3] Further, the treatment plan was entered in evidence. Thus, the findings, albeit proposed by the petitioner, were supported by the evidence. Consequently, there was no error.

---

[3] Testimony regarding the clinician's affidavit was not pertinent to the issue before us, nor was the affidavit presented to us for review whether there was any error as suggested by R.L.A.

2. <u>Closing of the court room</u>. R.L.A. contends that the judge closed the court room for the guardianship trial, thus violating her due process right to an open court room. As stated <u>infra</u>, the issue of closing the court room is moot because the decree and order before us have expired. There is no claim by R.L.A. that the matter is an issue likely to repeat itself.

However, even if her argument was properly before us, the record provided does not make clear whether the court room was completely "closed" for both days of trial or for what reason. The record also does not provide evidence as to which party, if any, requested that the court room be closed. The respondent points to one portion of the transcript:

COUNSEL: "Your honor, may I use her name in this setting?"

THE COURT: "Yes, that's why we've closed the -- yes."

COUNSEL: "Thank you, your Honor."

While we could infer, arguendo, that the court room was at least partially closed, it is unclear to what extent. Additionally, R.L.A admits that there was no objection to whatever type of closing occurred. As to the second day of trial on September 22, 2022, simply because the matter was heard via Zoom does not establish that the matter was closed to the public -- others could have "attended" the proceedings by

7

signing on to the appropriate Zoom meeting.  In her findings of fact and rulings of law, the judge made no mention of closing the court room.

"Due process is not a technical conception with a fixed content, but varies with context, and therefore is a flexible concept that calls for such procedural protections as the particular situation demands" (citation omitted).  Vazquez Diaz v. Commonwealth, 487 Mass. 336, 341 (2021).  In the context of a criminal case, "[a]n open court room 'enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.'"  Id. at 351, quoting Commonwealth v. Cohen (No. 1), 456 Mass. 94, 107 (2010).  However, the right to a public trial is "not absolute" (citation omitted).  Commonwealth v. Jones, 472 Mass. 707, 723 (2015).

In a criminal matter, a judge may prevent some members of the public from entry without violating the defendant's right to an open court.  See Commonwealth v. Maldonado, 466 Mass. 742, 748, cert. denied, 572 U.S. 1125 (2014).  Not "every condition placed on entry constitutes a constitutional closure of a court room."  Id.  In that context, a defendant bears the burden of proving that the public was in fact excluded from attending the public proceeding.  See Cohen (No. 1), 456 Mass. at 107.

Assuming, without deciding, that R.L.A. has the same burden, she has failed to produce sufficient evidence that the public was excluded from the guardianship trial.  Additionally, R.L.A. did not raise the issue of the alleged closed court room at trial.  We discern no risk, let alone a substantial risk, of a miscarriage of justice.

<u>Amended decree and order affirmed</u>.

By the Court (Vuono, Neyman & D'Angelo, JJ.[4]),

Clerk

Entered:  October 9, 2024.

---

[4] The panelists are listed in order of seniority.