NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11721

L.L., a juvenile  vs.  COMMONWEALTH.


Suffolk.      September 3, 2014. - December 5, 2014.

Present:  Gants, C.J., Spina, Botsford, Cordy, & Hines, JJ.


Sex Offender.  Sex Offender Registration and Community
     Notification Act.  Delinquent Child.  Evidence, Juvenile
     delinquency, Sex offender.  Supreme Judicial Court,
     Superintendence of inferior courts.



     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on July 7, 2014.

     The case was reported by Spina, J.


     Beth L. Eisenberg, Committee for Public Counsel Services
(Susan Oker, Committee for Public Counsel Services, with her)
for the juvenile.
     Catherine Langevin Semel, Assistant District Attorney, for
the Commonwealth.
     Eric Tennen, for Children's Law Center of Massachusetts &
others, amici curiae, submitted a brief.


     BOTSFORD, J.  After admitting to sufficient facts before a

Juvenile Court judge with respect to two counts of indecent

assault and battery on a person fourteen or older, the juvenile

filed a motion seeking relief from the obligation to register as

a sex offender pursuant to G. L. c. 6, § 178E (f) (§ 178E [f]). After a hearing, the judge denied the motion, thereby requiring the juvenile to register with the Sex Offender Registry Board (board). We consider here the juvenile's petition for relief pursuant to G. L. c. 211, § 3. The principal issue he raises concerns the standard by which a Juvenile Court judge determines the risk of reoffense on the part of a juvenile under § 178E (f), an issue that this court considered in Commonwealth v. Ronald R., 450 Mass. 262, 267-268 (2007). We seek to provide additional guidance concerning that standard in this opinion. We affirm the order denying the juvenile's motion for relief from registration.

Background.[1] On the afternoon of May 9, 2013, the juvenile, who was then sixteen years old, approached an adult woman from behind as she was walking her dog in Lynn and pulled down the sweatpants she was wearing to her thighs. The juvenile then made a vulgar comment about the victim's private parts, grabbed his own genitals, and ran away. The woman described her assailant to the Lynn police.

Eight days later, on the afternoon of May 17, 2013, a different woman was walking four children home from school in Lynn when she felt the juvenile touch her buttocks and pull her

---

[1] Because the juvenile entered a plea, the background information provided here is taken from the Commonwealth's recitation of facts at the plea hearing as well as reports and other materials included in the record before us.

pants to the ground.  The woman called the police and provided a description of her assailant, and soon thereafter, a Lynn police officer observed the juvenile, who fit this description, on a different street from where the incident had occurred.  Lynn police patrol units then stopped the juvenile.  At a showup identification procedure soon thereafter, the second woman identified the juvenile as the person who had pulled her pants down.  The juvenile was placed under arrest and taken to the Lynn police station.

After having the opportunity to speak with his mother, the juvenile agreed to speak with the police.  He admitted that he had pulled down the second woman's pants and, when the police mentioned the first woman to the juvenile, he admitted that he had pulled down her pants as well.[2]  Discussing the second incident, the juvenile explained that he had bought and smoked some marijuana that morning (May 17), and then, while walking, he "just went up to [the second woman] and pulled down her pants."  The juvenile did not give a reason for pulling down the second woman's pants, saying only that he "just felt the

---

[2] The first woman told police that she saw the juvenile again on the morning of the second incident (May 17).  When the police, on May 17, asked the juvenile whether he had seen the first woman that morning, the juvenile admitted to having pulled her pants down.  The police prepared a photographic array that included the juvenile and showed it to the first woman, who positively identified the juvenile's photograph.

excitement."  The juvenile also did not give a reason for targeting the first woman.

On May 20, 2013, two complaints issued from the Essex County Division of the Juvenile Court Department charging the juvenile with two counts of indecent assault and battery on a person fourteen years of age or older and one count of disorderly conduct.  On January 21, 2014, at a hearing before a Juvenile Court judge, the juvenile admitted to sufficient facts with regard to each charge and entered a plea that the judge accepted.[3]  Between this hearing and the final disposition of the case, the juvenile filed a motion for relief from the obligation to register with the board, and an evidentiary hearing on the motion was held on February 27, 2014.[4]

At that hearing, the juvenile sought to establish that he did not "pose a risk of reoffending or a danger to the public," and therefore should be relieved of the obligation to register. G. L. c. 6, § 178E (f).  He offered the report and testimony of

---

[3] The two women assaulted by the juvenile attended this hearing, and each made a statement to the judge about the impact of the juvenile's assault on her.

[4] Although the judge had not yet announced the sentence she intended to impose, she had indicated that a delinquency adjudication with a probationary sentence was likely, and in response to that, given the charges of indecent assault and battery on a person fourteen years of age or older, the juvenile filed his motion for relief from the obligation to register as a sex offender under G. L. c. 6, § 178E (f) (§ 178E [f]). In April of 2014, the juvenile formally was adjudicated delinquent and sentenced to probation, to terminate on his eighteenth birthday, September 10, 2014.

his expert witness, Dr. Barbara Quiñones, a forensic psychologist.  Quiñones testified to having administered a "guided clinical instrument" called the Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR), a test that she described as "strongly validated" by substantial research as an appropriate risk assessment tool for juvenile sex offenders.[5] According to Quiñones, the ERASOR enumerates twenty-five factors that have been "consistently shown to be associated with risk of re-offense," and in administering the test to the juvenile, she scored each factor as "present, not present, [or] partially present."  She found that in the juvenile's case, four of the twenty-five risk factors were present,[6] twenty risk factors were not present, no risk factors were partially present, and the presence of one factor was "unknown."  Based on her evaluation of the juvenile, which included a lengthy interview with him, a discussion with the juvenile's mother, the administration of the ERASOR test, and other evaluative processes, Quiñones saw no sign of deviant sexual behavior in the juvenile, in part because

---

[5] Dr. Barbara Quiñones noted that the Estimate of Risk of Adolescent Sexual Offense Recidivism (ERASOR) instrument, although validated, does not provide an actuarial assessment because an offender's ERASOR score is not tied to a percentage rate of reoffense.  She testified that there are no validated actuarial instruments for determining the risk of reoffense of juvenile sex offenders.

[6] The four were sexual assault of two or more victims, sexual assault of a stranger, "[n]egative peer associations and influence," and "[i]ncomplete sex offender specific treatment."

in her opinion such a diagnosis requires a finding of six months of deviant behavior -- a period of time far longer than that involved in the juvenile's case.  She also stated that in her opinion, based on research she described, the juvenile's lack of insight into why he committed the two offenses was not indicative of a higher risk of reoffense.  Based on her evaluation, Quiñones concluded that the juvenile's "risk to reoffend sexually is low," adding that, in forensic psychology, "there is no category of no risk," and that "[o]nce someone has committed a sexual offense, the lowest category would be low." She opined that the juvenile's risk of reoffense was so low that he should not be required to register as a sex offender.

At a hearing in April, 2014, the judge denied the juvenile's motion for relief from registration and proceeded to set out oral findings and reasons.  She described in some detail the facts of the two assaults on the two women, and stated that she found Quiñones's testimony "thoughtful," but did not credit the expert's opinion about the juvenile's lack of sexual deviance.  The judge also rejected Quiñones's ultimate conclusion that the juvenile posed a low risk of reoffense, "based primarily on the facts and the circumstances" of the offenses, which the judge characterized as "egregious."  She stated that this "was a broad daylight sexual assault on two strangers in our community with no apparent measure of

restraint" or "any understanding of why he committed these offenses."  The judge determined that the juvenile posed a risk of reoffense and would be required to register with the board.[7]

The juvenile thereafter filed in the county court his petition pursuant to G. L. c. 211, § 3, seeking relief with respect to the order denying him relief from the obligation to register as a sex offender.  The single justice stayed the judge's order requiring registration and reserved and reported the matter to the full court.

Discussion.  1.  Juvenile's petition for relief under G. L. c. 211, § 3.  As a threshold matter, the Commonwealth contends that there is no issue properly before the full court for review, because the juvenile, in the Commonwealth's view, has abandoned the claim he raised in his petition for relief under G. L. c. 211, § 3, that he filed in the county court.  The argument fails.  Although this court has deemed an argument waived where it was not raised either before the trial judge or in a G. L. c. 211, § 3, petition for relief, see Paquette v. Commonwealth, 440 Mass. 121, 124 n.3 (2003), cert. denied, 540

_____

[7] At a subsequent hearing on the juvenile's motion to reconsider the denial of relief from registration, the judge indicated that she had used her discretion in accordance with Commonwealth v. Ronald R., 450 Mass. 262 (2007), to deny relief from registration.  She added that she had carefully reviewed the victims' statements and the effect of these offenses on the victims, and stated that she was "well aware of the ever evolving research in the area of the juvenile behavior and the juvenile brain."  The judge denied the motion for reconsideration.

U.S. 1150 (2004), that is not the case here.  The juvenile previously has raised the substance of the claims he presents to this court, either in the Juvenile Court or before the single justice.  In any event, the single justice has reserved and reported the case to this court, and it is properly before us. See Burke v. Commonwealth, 373 Mass. 157, 159 (1977).  Cf. Commonwealth v. Goodwin, 458 Mass. 11, 14-15 (2010).[8]

2.  Standard for obtaining relief from registration.  Under the sex offender registration act, G. L. c. 6, §§ 178C-178P (act), sex offenders, whether adults who have been convicted of a "sex offense" within the scope of the act or juveniles adjudicated as a youthful offender or delinquent on account of committing a qualifying sex offense, are required to register as sex offenders with the board, unless relieved of doing so under

---

[8] The Commonwealth also suggests that the juvenile should be required to exhaust his administrative remedies by proceeding through the sex offender registration process and, if necessary, appealing from the final classification decision of the Sex Offender Registry Board (board) under G. L. c. 6, § 178M.  The Commonwealth is incorrect.  The statutory review process for decisions of the board does not apply to decisions of a judge under § 178E (f).  See Ronald R., 450 Mass. at 266.  A sex offender aggrieved by a denial of relief from registration under § 178E (f) has "no automatic right of appeal," but may file a petition with a single justice of this court under G. L. c. 211, § 3, Ronald R., supra at 266-267, although to obtain substantive review, the grounds to do so must be significant.  See Care & Protection of Zita, 455 Mass. 272, 278 (2009) ("Even in the absence of an adequate alternative remedy . . . review on the substantive merits pursuant to G. L. c. 211, § 3, is not automatic" because "petitioner must also demonstrate that [issue] raises a substantial claim of violation of her substantive rights").

one of three statutory exemptions -- of which § 178E (f) is one.

See Ronald R., 450 Mass. at 264 ("there is a presumption that

sex offenders must register" under act).  Section 178E (f)

provides in relevant part:

> "In the case of a sex offender who has been convicted of a sex offense or adjudicated as a youthful offender or as a delinquent juvenile by reason of a sex offense, on or after December 12, 1999, and who has not been sentenced to immediate confinement, the court shall, within [fourteen] days of sentencing, determine whether the circumstances of the offense in conjunction with the offender's criminal history indicate that the sex offender does not pose a risk of reoffense or a danger to the public.  If the court so determines, the court shall relieve such sex offender of the obligation to register under [§§] 178C to 178P, inclusive."[9]

The juvenile claims that due process requires a judge, in

determining under § 178E (f) whether a juvenile should be

relieved from the obligation to register as a sex offender based

on his or her "risk of reoffense," to assess the probability of

such risk according to an articulated standard that itself is

based on objective factors.  His argument is that a delinquency

adjudication of a sex offense together with "the juvenile

court's conclusion as to the propriety for excusing (or [not])

the juvenile's registration obligation" as a sex offender form

---

[9] Under the plain terms of § 178E (f), the exemption from registration for which it provides applies to juvenile as well as adult sex offenders who are not "sentenced to immediate confinement."  This case is brought by a juvenile sex offender, and accordingly, in discussing § 178E (f), we focus solely on the statute's application to juvenile sex offenders in this opinion.  In doing so, we do not intend to suggest that we would interpret the statute differently in the case of an adult sex offender; that issue is not before us.

the "first step" in the statutory registration process; because
this is so, the procedural due process requirements applicable
to this registration process come into play; and these must
include a requirement that a judge performing the assessment
regarding risk of reoffense under § 178E (f) do so according to
a defined, objective standard.  This is especially important for
juveniles, he claims, because of the "historical view of the
juvenile justice system as primarily rehabilitative."

We disagree that a judge's determination under § 178E (f)
whether to relieve a juvenile sex offender from the act's
registration requirements is properly characterized as an
integral part of the registration system itself.  See
Commonwealth v. Shindell, 63 Mass. App. Ct. 503, 505 (2005)
(registration requirement is "decision made not by the trial
court, but by the . . . board").  See also Ronald R., 450 Mass.
at 266.  But there is no question that the statutory sex
offender registration regime prescribed by the act imposes both
burdensome and long-lasting requirements on a sex offender that
implicate his or her liberty interests.[10]  And there also is no

_____

[10] See Doe, Sex Offender Registry Bd. No. 68549 v. Sex
Offender Registry Bd., ante at 102, 106 (2014) (Doe No. 68549);
Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender
Registry Bd., 466 Mass. 594, 596 (2013) (Doe No. 205614) (sex
offender registration system "implicates constitutionally
protected liberty and privacy interests").  See also Moe v. Sex
Offender Registry Bd., 467 Mass. 598, 604 (2014) ("public
identification of a sex offender poses a risk of serious adverse
consequences to that offender, including the risk that

question that, in offering a juvenile sex offender who has not been sentenced to immediate confinement the opportunity to be relieved of the obligation to participate in the registration system in any way, § 178E (f) provides a significant benefit. Accordingly, it is important that the statute's standards be as clear as reasonably possible.

In Ronald R., after making a delinquency adjudication based on the juvenile's commission of a sex offense (rape of a six year old child), the Juvenile Court judge imposed a suspended sentence of commitment to the Department of Youth Services until the juvenile turned eighteen and placed the juvenile on probation. Ronald R., 450 Mass. at 263. The judge then held a separate nonevidentiary hearing pursuant to § 178E (f) and denied the juvenile's motion for relief from the obligation to register as a sex offender. Id. at 264. The judge did not make findings, written or oral, but stated that he exercised his discretion under § 178E (f) not to relieve the juvenile from registration based on the facts of the case. Id. at 267, 270. This court rejected the juvenile's argument that the judge abused his discretion, and, quoting § 178E (f), stated that the judge's "sole task" under the statute was "to 'determine whether

---

the sex offender will suffer discrimination in employment and housing, and will otherwise suffer from the stigma of being identified as a sex offender, which sometimes means the additional risk of being harassed or assaulted"); Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 791 (2008).

the circumstances of the offense in conjunction with the [juvenile's] criminal history indicate that the [juvenile] does not pose a risk of reoffense or a danger to the public.'"[11]  Id. at 267.

The juvenile in this case argues that neither the text of § 178E (f) nor Ronald R. offers any meaningful guidance about how a Juvenile Court judge is to determine the "risk of reoffense," creating a statutory regime that permits the standardless and inconsistent exercise of judicial discretion in violation of fundamental concepts of fairness.  Cf. BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 588 (1996) (Breyer, J., concurring) (legal standards "must offer some kind of constraint upon a . . . court's discretion, and thus protection against purely arbitrary behavior").  Particularly for children, for whom the requirement to register as a sex offender may have more profound consequences than for an adult,[12] and in light of the

---

[11] In Ronald R., 450 Mass. at 267, in addition to stating that the judge's determination under § 178E (f) was discretionary, we interpreted the statute to impose upon the juvenile the burden of establishing that he did not pose a risk of reoffense.  Id. at 268-269.  We discuss the issue of discretion in note 27, infra, but the juvenile does not challenge the allocation of burden of proof, and we have no reason to reconsider the point here.

[12] Registration may have especially serious consequences for juvenile sex offenders.  See, e.g., Halbrook, Juvenile Pariahs, 65 Hastings L.J. 1, 17-18 (2013) ("Humiliation and shame associated with registry status, and the risk of being exposed, often serve to isolate young people on registries," and research suggests that consequences of registration "affect a former

rehabilitative focus of the juvenile justice system, the juvenile claims it is imperative that this court "establish the basic parameters of the term 'risk'" in the statutory phrase "risk of reoffense." He goes on to argue that at least in the context of juvenile sex offenders, the phrase "risk of reoffense" should be measured by whether the offender is "likely" to reoffend, and determined by analyzing factors such as the "seriousness of the threatened harm, the relative certainty of the anticipated harm, and the possibility of successful intervention to prevent that harm." In support of this standard, the juvenile points to Commonwealth v. Boucher, 438 Mass. 274, 276 (2002), a case involving the sexually dangerous person (SDP) statute, G. L. c. 123A, §§ 1-16.

As previously stated, we agree with the juvenile on the importance of providing a more focused approach to the risk assessment that § 178E (f) calls for, but disagree with his proffered standard. The Commonwealth points out, correctly, that the Legislature did not use the words "likely" to reoffend in § 178E (f), as it did in the SDP statute. See G. L. c. 123A, § 1 (definition of "[s]exually dangerous person"). As the SDP

---

offender's ability to rehabilitate and reintegrate into society"); Letourneau & Caldwell, Expensive, Harmful Policies that Don't Work or How Juvenile Sexual Offending Is Addressed in the U.S., 8 Int'l J. of Behavioral Consultation & Therapy 23, 27 (2013) (consequences associated with juvenile registration and notification include "stigma, isolation, shame, and depression").

statute demonstrates, if the Legislature had wanted to use the "likely" standard in § 178E (f), it could have done so.  See, e.g., Commonwealth v. LeBlanc, 407 Mass. 70, 74-75 (1990) (Legislature's inclusion of particular language in certain statutes, and omission of such language in statute at issue, indicates affirmative choice not to include that language). Although registration imposes distinct burdens on a sex offender and perhaps particularly a juvenile sex offender, the infringement on personal liberty is far less than if adjudicated an SDP.  See Doe, Sex Offender Registry Bd. No. 27914 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 610, 615 (2012).  In the circumstances, it is not reasonable to infer that the Legislature intended the phrase, "does not pose a risk of reoffense," in § 178E (f) to mean, even for a juvenile sex offender, that he or she was not "likely to reoffend."[13]

---

[13] Furthermore, the Legislature has used the word "likely" in another provision of the act, G. L. c. 6, § 178G, which authorizes certain registered sex offenders to seek to terminate the obligation to register after ten years.  Section 178G provides in relevant part:  "The duty of a sex offender required to register" shall "end [twenty] years after such sex offender has been convicted or adjudicated or has been released from all custody or supervision, whichever last occurs," unless the "person required to register with the [board] . . . make[s] an application to [the] board to terminate the obligation upon proof, by clear and convincing evidence, that the person has not committed a sex offense within ten years following conviction, adjudication or release from all custody or supervision, whichever is later, and is not likely to pose a danger to the safety of others" (emphasis added).  Given the situational differences between a sex offender who was last convicted of a sex offense at least ten years ago and a sex offender who was

In attempting to give more definition to the standard regarding risk of reoffense incorporated into § 178E (f), it is useful to take a somewhat functional approach.  We view the standard for determining "risk of reoffense" under § 178E (f) as having two components:  (1) the level of risk warranting relief from registration, and (2) the basis on which the judge assesses this risk.  We consider each component separately.

a.  Level of risk.  Despite the statute's indication that the judge may relieve an offender from registration only if he or she "does not pose a risk of reoffense or a danger to the public," we do not interpret this language to mean "no risk," because the absence of any risk is impossible as a matter of logic and common sense.  See In re Harold W., App. Ct. of Ill., Second Dist., No. 2-12-1235 (Apr. 18, 2014) (unpublished) (interpretation of statute allowing termination of sex offender registration upon showing of "no risk to the community"; "to require proof of the complete absence of any risk would mean that no one would ever be able to satisfy the statute beyond any doubt" because "[t]here is always a possibility that sex offenders will reoffend").  Moreover, there appears to be a consensus among experts that it is impossible to say that a

convicted or adjudicated delinquent and sentenced within the previous fourteen days, it is reasonable to assume that the Legislature used different words in §§ 178E (f) and 178G because it intended different standards to govern the assessment of risk.

person who has committed a sex offense -- which by definition includes every person potentially subject to registration under the act -- poses no risk of reoffense.[14],[15]  We will not attribute to the Legislature the purpose of rendering § 178E (f) meaningless by means of an insurmountable standard for obtaining relief from registration.  See Victory Distribs., Inc. v. Ayer Div. of the Dist. Court Dep't, 435 Mass. 136, 140 (2001); Commonwealth v. Wade, 372 Mass. 91, 95 (1977) (refusing to construe statute such that it "would become a useless legislative exercise").

Because § 178E (f) itself does not clearly define the appropriate level of risk warranting relief from registration under § 178E (f), we seek guidance on the issue from other sections of the act.  See Pentucket Manor Chronic Hosp., Inc. v. Rate Setting Comm'n, 394 Mass. 233, 240 (1985) ("When the meaning of a statute is brought into question, a court properly should read other sections and should construe them together . . . so as to constitute an harmonious whole consistent with

---

[14] Quiñones testified to this effect in the present case, and the record suggests that this part of her testimony was credited by the judge.  See Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 762 (2006) (Doe No. 1211) (noting expert's statement that "I don't think that once anybody's engaged in sexual acting out behavior can you say that there is absolutely no risk").

[15] The Commonwealth conceded at oral argument that the standard for relief from registration cannot require a showing that a sex offender poses absolutely no risk of reoffense, because such a standard would be impossible to satisfy.

the legislative purpose" [citation omitted]).  See also <u>Care &</u> <u>Protection of Jamison</u>, 467 Mass. 269, 276 (2014); <u>Wolfe</u> v. <u>Gormally</u>, 440 Mass. 699, 704 (2004).  General Laws c. 6, § 178K (1), in particular, is pertinent.[16]  This section directs the board to establish a system by which all sex offenders required to register are classified by risk of reoffense -- low, moderate, or high -- according to the factors spelled out in § 178K (1) (<u>a</u>)-(<u>l</u>), and in the board's implementing regulations, 803 Mass. Code Regs. § 1.40 (2013).  See <u>Doe, Sex Offender</u> <u>Registry Bd. No. 68549</u> v. <u>Sex Offender Registry Bd.</u>, <u>ante</u> 102, 105 (2014) (<u>Doe No. 68549</u>).  See also G. L. c. 6, § 178K (2) (<u>a</u>)-(<u>c</u>).  Section 178K (1) and (2) (<u>a</u>) establishes "low" risk of reoffense as the lowest level of risk classification, and therefore the threshold level of risk requiring registration. See <u>Doe No. 68549</u>, <u>supra</u> at 112.  See also <u>Doe, Sex Offender</u> <u>Registry Bd. No. 24341</u> v. <u>Sex Offender Registry Bd.</u>, 74 Mass. App. Ct. 383, 387 (2009) (<u>Doe No. 24341</u>).  A "low" risk of reoffense under § 178K (1) is "not merely a hypothetical or speculative potential risk."  <u>Doe No. 24341</u>, <u>supra</u> at 388.

---

[16] The Legislature created the exemption from registration provision in § 178E (<u>f</u>) and the list of factors for assessing risk of reoffense set out in G. L. c. 6, § 178K (1), as part of the same piece of legislation.  See St. 1999, c. 74, § 2.  This "common source" of origin supports reading the two sections together.  See <u>Eaton</u> v. <u>Federal Nat'l Mtge. Ass'n</u>, 462 Mass. 569, 585 n.23 (2012).  See also <u>Cumberland Farms, Inc</u>. v. <u>Milk</u> <u>Control Comm'n</u>, 340 Mass. 672, 679 (1960).

Rather, it is a risk that is "cognizable"[17] -- i.e.,
"perceptible"; "[c]apable of being known, perceived, or
apprehended by the senses or intellect"[18] -- and one that can and
indeed must be able to be articulated and described based on
affirmative evidence.  See, e.g., Doe No. 68549, supra at 108;
Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry
Bd., 447 Mass. 750, 762-766 (2006) (Doe No. 1211).  It follows
that to qualify for exemption from registration under § 178E
(f), a juvenile sex offender's risk of reoffense should be less
than this "low" registration-triggering risk.  In other words,
it is a risk that is more than "no risk" -- and therefore more
than hypothetical or purely speculative -- but not as definite
as what qualifies as "low" under § 178K (1).

     b.  Assessment of risk of reoffense.  We turn to the basis
on which a Juvenile Court judge is to make the assessment of
risk of reoffense under § 178E (f).  The statute specifies that
the judge is to determine this risk based on "the circumstances
of the offense in conjunction with the offender's criminal
history."  G. L. c. 6, § 178E (f).  However, it is silent on the
relationship between these two factors and a predictive
assessment of risk of reoffense, and in the case of a juvenile

---

     [17] See Doe No. 1211, 447 Mass. at 762.

     [18] 2 Oxford English Dictionary 596 (1978).

sex offender particularly, that relationship is not self-evident.[19,20]

The link between the circumstances of the offense and criminal history and an offender's risk of reoffense may be illuminated, however, where, as was the case here, the juvenile presents expert evidence that focuses directly on the question

---

[19] Research suggests some differing views concerning the connection between "the circumstances of the offense" and risk of reoffense. Compare, e.g., Batastini, Hunt, Present-Koller, & DeMatteo, Federal Standards for Community Registration of Juvenile Sex Offenders: An Evaluation of Risk Prediction and Future Implications, 17 Psychol. Pub. Policy & L. 451, 458 (2011) (Federal Standards), with Russell, Multidisciplinary Response to Youth with Sexual Behavior Problems, 40 Wm. Mitchell L. Rev. 1058, 1070 (2014). However, with respect to criminal history, there seems to be a consensus that juvenile sex offenders have a relatively low rate of recidivism -- even though "[m]ethodological variations clearly influence recidivism rates," and studies disagree as to what the exact rate is. See United States Dep't of Justice, Office of Juvenile Justice and Delinquency Prevention, Juveniles Who Have Sexually Offended 31-32 (2001) (summarizing seven studies that found rate of sexual recidivism by juvenile sex offenders to be between eight and thirty-seven per cent). See also Federal Standards, supra at 457-458 ("sex-specific recidivism rates" of juvenile sex offenders are between fourteen and twenty-nine per cent); Parker, Branded for Life: The Unconstitutionality of Mandatory and Lifetime Juvenile Sex Offender Registration and Notification, 21 Va. J. Soc. Pol'y & L. 167, 188 (2014) ("Studies support a consensus among experienced practitioners in the field of juvenile sexual abuse intervention that juvenile sex offenders have a low rate of recidivism [between two and fourteen per cent] and are unlikely to become adult sex offenders").

[20] Moreover, where an offense has caused a victim great emotional distress, there is the possibility that a decision not to relieve the offender of the obligation to register would be based solely on the effect that the offense had on the victim, rather than on the circumstances of the offense and the offender's criminal history.

of risk.  In this case, for example, Quiñones testified that the juvenile's targeting of strangers -- shown by the circumstances of the two offenses -- indicated a risk of reoffense, but that the juvenile's commission of two sexual offenses within a brief period (eight days) did not, in her opinion, increase his risk of reoffense because he committed the second offense without having been detected as having committed the first.[21]  If a juvenile does offer expert evidence regarding his or her risk of reoffense -- e.g., expert testimony or relevant research studies by experts in the field -- the judge should consider that evidence in assessing the "circumstances of the offense" and ultimately determining whether to exempt the juvenile from registration.[22]  That the judge is not bound to credit proffered expert testimony, see Commonwealth v. DeMinico, 408 Mass. 230, 235 (1990), does not diminish the obligation to give it serious, reasoned consideration.  Cf. Bianco v. Bianco, 371 Mass. 420, 423 (1976) (where judge has broad discretion, "it is important

---

[21] Quiñones also testified that the juvenile's commission of his offenses in public and during daytime indicated a lack of intent to commit more invasive sexual assaults, which suggested, to Quiñones, a decreased risk of reoffense.

[22] Here, the juvenile presented an expert witness who testified.  Later, after the juvenile's motion for relief from registration had been denied, the juvenile submitted a number of studies in connection with his motion for reconsideration of the denial of his motion for relief from registration.  Given the timing of the submission of these studies, the judge acted within her discretion in declining to consider them.

that a judge's findings clearly indicate that [the judge] has weighed all" relevant considerations).

Independent of expert evidence, and especially where no expert evidence is offered, the judge may seek guidance by reference to the factors addressing risk of reoffense in G. L. c. 6, § 178K (1) (a)-(l), and the board's implementing regulations. More particularly, it may be appropriate for the judge to evaluate the juvenile's criminal history and the circumstances of his or her offense through the lens provided by these statutory and regulatory risk factors. Consideration, for example, of the juvenile sex offender's status as a juvenile at the time of the offense and the significance of that status, see G. L. c. 6, § 178K (1) (e), would seem critical in every case. The relevance of other factors will depend on the specific facts presented.[23]

---

[23] The juvenile as well as amici express concern about tying the predictive assessment of risk required under § 178E (f) too closely to the factors used by the board in its classification decisions under § 178K (1). They argue that scientific research and discoveries about sexual offenders have called and continue to call into question the accuracy of commonly held views about factors that indicate risk of sex offender recidivism, and they assert that the board does not keep up with these changes. We have recognized the problem of the board's failure to update its regulations and its continued reliance on increasingly outdated studies and research. See Doe No. 205614, 466 Mass. at 609 ("eleven years have passed since [the board] last updated [its] guidelines, during which time knowledge and understanding of sexual recidivism has expanded considerably"); Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 623 n.6 (2010) (board's guidelines "may require more frequent modification in order to reflect accurately the current

With respect to the process by which a Juvenile Court judge is to reach a decision on risk of reoffense under § 178E (f), as previously mentioned, this section is one of three provisions in the act providing for exemption from registration; the other two are G. L. c. 6, §§ 178E (e) (on Commonwealth's motion, judge may find that offender need not register) and 178K (2) (d) (board may determine that offender need not register). Section 178K (2) (d) specifies that, with respect to the board, it must support a decision to "relieve [an] offender of any further obligation to register" upon "making specific written findings." The absence of similar language in § 178E (f) indicates that the Legislature did not intend to impose such a requirement. See Ronald R., 450 Mass. at 270 (although sex offender may request written findings, decision whether to issue them rests in judge's discretion). Rather, by specifying that the trial (or plea) judge is to make the determination concerning the offender's "risk of reoffense" and exemption from the obligation to register within two weeks of imposing sentence, the Legislature appears to have contemplated that the judge would make the determination not on the basis of a wholly independent

_____

state of knowledge"). We also have recognized the issue specifically in relation to juvenile sex offenders, because of the gaps between juveniles and adults and the rapid developments in scientific and social science research in this area. See Doe No. 68549, supra at 114-116. However, we anticipate and expect that the board will soon begin to take corrective steps in relation to the need to update its regulations.

proceeding, but essentially in connection with the resolution of the delinquency proceeding, informed by the knowledge and understanding of the circumstances of both the offense and the offender that the judge had acquired by virtue of being the trial (or plea) judge.[24]  Cf. Commonwealth v. Ventura, 465 Mass. 202, 212 (2013).

Although a Juvenile Court judge is not obligated to issue written findings under § 178E (f), and although the judge's process of determining a juvenile sex offender's relief from registration under this section may be less formal than the process required by the board under § 178K (2) (d), it is important nonetheless for the judge to explain on the record with some specificity the reasons for his or her assessment of risk of reoffense and resulting determination whether the juvenile should be relieved of the obligation to register.  Cf. Long v. Wickett, 50 Mass. App. Ct. 380, 402 (2000), quoting Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 434 (1968) (even where judge has "broad discretion," it is "essential . . . that a reviewing court have some basis for distinguishing between well-reasoned conclusions arrived at after a comprehensive consideration of all relevant factors, and mere boiler-plate approval phrased in

_____

[24] As discussed previously in the text, the judge of course also would be informed by any information relevant to assessing the risk of reoffense that the juvenile or the Commonwealth presented in connection with the § 178E (f) determination.

appropriate language but unsupported by evaluation of the facts or analysis of the law").[25] The presence in the record of the judge's basis for allowing or denying relief from registration is of particular importance where, as here, the juvenile has presented expert testimony or other evidence addressing his risk of reoffense. Cf. Bianco, 371 Mass. at 423.

3. Disposition of present case. The juvenile claims that the judge's denial of his motion for relief from registration as a sex offender must be reversed because, on the record before her, the judge abused her discretion in rejecting the opinion of his expert witness.

"[E]xperts' opinions are not binding on the trier of fact, who may accept or reject them in whole or in part." Commonwealth v. O'Brien, 423 Mass. 841, 854 (1996) (quotation omitted). See DeMinico, 408 Mass. at 235. The juvenile does not contest this point directly, but maintains that the judge nevertheless was obligated to (1) consider "substantial,

---

[25] There is no direct right to judicial review of a judge's exemption determination under § 178E (f). See note 8, supra. But quite apart from judicial review, principles of fairness and the need for reasoned consistency make the court's observations in Long v. Wickett, 50 Mass. App. Ct. 380, 402 (2000), about the importance of findings relevant here. Where, as in this case, the juvenile has offered expert testimony or research, the judge should consider it and indicate on the record her view of this evidence and its relationship to her determination concerning the offender's obligation to register. Compare Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 694 (2012) (obligation of administrative agency in adjudicatory proceeding to explain reasons for rejecting expert testimony).

uncontested expert evidence" concerning the risk of reoffense, and (2) adequately explain any rejection of such expert testimony.

On the first point, the record makes clear that the judge here did consider the opinion testimony of Quiñones, discussing a number of the expert's specific points or opinions in the judge's oral findings.  As to the second point, the record also shows that the judge did explain in general terms her disagreement with some of Quiñones's opinions.  In particular, the judge explained that she did not credit the expert's opinion that the juvenile's offenses were not connected to sexual deviance or that marijuana contributed to the juvenile's offense, based on the judge's determination that the juvenile committed "a broad daylight sexual assault on two strangers in our community with no apparent measure of restraint" or "any understanding of why he committed these offenses."  The judge stated that these circumstances led her not to have confidence in Quiñones's opinion that the juvenile's level of risk of reoffending was low enough to relieve him from the requirement of registration.  In both the judge's initial explanation of her reasons for requiring the juvenile to register and her later explanation of her denial of his motion for reconsideration, the judge emphasized that she had given careful consideration to Quiñones's testimony and opinions.  Although one might take a

different view of Quiñones's testimony and opinions from that of the judge, her rejection of certain of those opinions was neither unexplained nor without any basis.

Furthermore, the judge's focus in her findings on certain of the circumstances of the juvenile's offenses -- the daylight attacks in the public street on two separate individuals without "apparent . . . restraint" and without insight into the reasons for doing so -- reflects in substance some of the concerns included in the factors for assessing risk of reoffense set out in G. L. c. 6, § 178K (1), and associated regulations.[26] Considering the judge's findings in light of our discussion in this opinion of the risk of reoffense standard set out in § 178E (f), we cannot say that the findings do not support the judge's assessment of that risk. In sum, we conclude that based on the record before her, the judge's ultimate determination that the juvenile should not be relieved of the obligation to register as a sex offender did not lie "outside the bounds of reasonable alternatives," Adoption of Mariano, 77 Mass. App. Ct. 656, 660

---

[26] For example, the judge's attention to the juvenile's two separate assaults and lack of restraint suggests a correspondence with the factor of "repetitive and compulsive behavior" set out in G. L. c. 6, § 178K (1) (a) (ii), and 803 Mass. Code Regs. § 1.40(2) (2013).

(2010), and, accordingly, did not constitute an abuse of her discretion.[27]

Judgment affirmed.

---

[27] In discussing the abuse of discretion standard in Ronald R., 450 Mass. at 267, the court stated: "In order for the juvenile to sustain an abuse of discretion claim, he must demonstrate that 'no conscientious judge, acting intelligently, could honestly have taken the view expressed by him.' Commonwealth v. Ira I., 439 Mass. 805, 809 (2003), quoting Commonwealth v. Bys, 370 Mass. 350, 361 (1976)." See Davis v. Boston Elevated Ry. Co., 235 Mass. 482, 502 (1920). As the dates of the cases just cited suggest, this articulation of the abuse of discretion standard of review has enjoyed a long career in our jurisprudence, but, we conclude, it has "earned its retirement." Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008), quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 (2007). An appellate court's review of a trial judge's decision for abuse of discretion must give great deference to the judge's exercise of discretion; it is plainly not an abuse of discretion simply because a reviewing court would have reached a different result. See Bucchiere v. New England Tel. & Tel. Co., 396 Mass. 639, 641 (1986). But the "no conscientious judge" standard is so deferential that, if actually applied, an abuse of discretion would be as rare as flying pigs. When an appellate court concludes that a judge abused his or her discretion, the court is not, in fact, finding that the judge was not conscientious or, for that matter, not intelligent or honest. Borrowing from other courts, we think it more accurate to say that a judge's discretionary decision constitutes an abuse of discretion where we conclude the judge made "a clear error of judgment in weighing" the factors relevant to the decision, see Picciotto v. Continental Cas. Co., 512 F.3d 9, 15 (1st Cir. 2008) (citation omitted), such that the decision falls outside the range of reasonable alternatives. See Zervos v. Verizon N.Y., Inc., 252 F.3d 163, 168-169 (2d Cir. 2001); Adoption of Mariano, 77 Mass. App. Ct. 656, 660 (2010).