NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1015

GUARDIANSHIP OF J.L.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a trial, a judge of the Probate and Family Court found the respondent, J.L., to be an incapacitated person, and entered a decree and order pursuant to G. L. c. 190B, § 5-306 (b) (1)-(8).  The respondent argues that the judge erred and abused his discretion in denying his request to testify, finding that the requirements of G. L. 190B, § 5-306 (b) (1)-(8) were met even though the medical certificate was excluded from evidence, and denying his motion to exclude the admission of his medical records.  We affirm.

Background.  On November 21, 2022, the Veteran's Administration (VA) Boston Healthcare System (petitioner) filed a petition in the Probate and Family Court seeking the appointment of a general guardian for J.L. because he "has retained no ability to meet essential requirements for physical

health, safety, and self-care."  On November 29, 2022, a judge appointed a temporary guardian for J.L. and subsequently extended that order through October 20, 2023.  On January 20, 2023, J.L. filed an objection to the issuance of a permanent guardianship.

On October 20, 2023, a judge held a trial.  We summarize the facts as the judge might have found them.  At the time of trial, J.L. was a seventy-two year old Vietnam veteran with a history of hypertension, coronary artery bypass graft, chronic tobacco use, and alcohol use disorder.  He had also been diagnosed with a neurocognitive disorder and traumatic brain injury.  In October 2022, J.L. was admitted to a VA Hospital after he was "found down" for an undetermined period of time and was found to have moderate temporal and orbital wasting.  While J.L. was hospitalized, he executed a health care proxy naming his sister, but she was not willing to serve as his health care agent.

On March 23, 2023, J.L. was discharged to his apartment but readmitted to the VA hospital on April 19, 2023, after a wellness check by his social worker and peer specialist.  Since then, J.L. has resided in the community living center operated by the VA in Brockton, which is a skilled nursing facility that provides "24/7 nursing care and support."  J.L. has been

2

engaging in structured activities related to his basic hygiene, dressing, toileting needs, meal times, and social activities. J.L. has shown stability in his medical and physical condition in the setting of a structured environment and can communicate his preferences and follow commands. He is independent with bed mobility, transfers, propelling in his wheelchair, eating, and oral hygiene. He has not exhibited any problematic behaviors while at the facility, but he wishes to live independently in his apartment.

Dr. Marcus Ruopp and Jennifer Benitz testified for the petitioner. Dr. Ruopp, who served as J.L.'s direct care provider at the time of trial, testified that when J.L. was readmitted to the hospital in April 2023, he showed a moderate to severe neurocognitive disorder and demonstrated cognitive, functional, and physical decline. Dr. Ruopp testified that J.L. did not understand the supports that he needs to be successful and the reality of his decline since he went home. Benitz, a VA social worker who began working with J.L. in 2020, testified that in October 2022, she found J.L. lying in front of the door to his apartment and unable to move. Benitz did not believe the services J.L. had in place at the time were sufficient to keep him safe at home.

The petitioner listed J.L. on its witness list, but rested its case without calling J.L. to testify. Although J.L.'s attorney did not file a witness list, J.L.'s counsel told the judge that J.L. wanted to testify. The petitioner objected, noting that counsel failed to submit a witness list. The judge allowed J.L. to speak at trial and give a narrative statement, asking him, "Do you want to tell us anything about why we're here . . . and your ability to succeed at home? Anything like [w]hat we've been discussing today?" J.L. told the judge that he did not believe he needed a guardian and that he was capable of taking care of himself. J.L. testified that he never fell out of his wheelchair and that he finished taking his prescribed medications and did not need them anymore. He did not recall taking any medications and testified that he did not take any medications for his cholesterol and diabetes because "everything is all right."

After the trial concluded, the judge found that the requirements of G. L. c. 190B, § 5-306 (b) (1)-(8) were met and that a basis existed for the guardianship.

Discussion. 1. Limiting respondent's ability to testify. J.L. argues that the judge erred by refusing to allow him to testify because he was not on the respondent's witness list. We disagree. We review the judge's ruling for abuse of discretion

4

or other error of law.  See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

J.L. fails to show how standard testimonial evidence would have led to a different outcome.  The judge afforded J.L. the ability to give a statement and invited him to tell the judge what he wanted.  Nothing in the record demonstrates that the judge curtailed J.L.'s narrative or prevented him from expressing himself.  In fact, J.L. was able to express his thoughts and beliefs without objection from the petitioner, which arguably was more than he could have done had he testified and been subjected to cross-examination.  Further, J.L. did not file a motion for a new trial and did not make any offers of proof of what he might have said that would have affected the outcome.  Therefore, we discern no abuse of discretion or prejudicial error.  See L.L., 470 Mass. at 185 n.27.

2.  Medical certificate.  J.L. contends that because no medical certificate was entered into evidence, the judge erred by finding that the requirements of G. L. c. 190B, § 5-306 (b) (1)-(8) had been met.  We are not persuaded.  As we noted in Guardianship of A.R., 99 Mass. App. Ct. 349, 353-354 (2021), G. L. c. 190B, § 5-303 (b) (11) requires that a medical certificate be filed with a petition for the appointment of a guardianship of an incapacitated person.  The medical

5

certificate form is used in the process of determining whether to appoint a guardian and must be filed, as it was here, with a guardianship petition.[1]  See Probate and Family Court Guardianship and Conservatorship Form MPC 400.  That requirement, however, does not mean that the document is admissible.  See Guardianship of A.R., supra at 354.  The medical certificate is a pleading and was therefore inadmissible at trial.  Id. at 355-356.  We discern no error.

3.  Medical records.  J.L. argues that the trial judge abused his discretion by admitting his medical records into evidence because they were not certified pursuant to G. L. c. 233, § 79 and because they contained hearsay.  We review the judge's evidentiary ruling for abuse of discretion.  See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013).  On April 27, 2023, another judge conducted a pretrial conference hearing and issued a scheduling order requiring counsel to serve all motions in limine and motions to preclude evidence at least ten days before trial.  At the pretrial conference hearing, the petitioner gave notice that it intended to offer J.L.'s VA hospital and other medical records into evidence.  J.L., however, did not file a motion in limine

_____

[1] An updated medical certificate must also be filed, as it was here, closer in time to the trial.  See G. L. c. 190B, § 5-306 (b) (4).

6

to preclude the introduction of the medical records until the day of the trial.  The petitioner objected to the late-filed motion in limine, arguing that trial counsel had been on notice since April 2023 of the petitioner's intent to offer the records as evidence at trial and that counsel did not attempt to obtain a copy of the records.  The trial judge stated that he could distinguish between what was admissible and what was not.  The petitioner made no reference to the medical records during trial, and the judge did not make any findings relying on the medical records.  We conclude there was no abuse of discretion or error.

<u>Decree and order affirmed</u>.

By the Court (Meade, Shin & Tan, JJ.[2]),

*Paul Little*

Clerk

Entered:  August 5, 2025.

---

[2] The panelists are listed in order of seniority.