NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-659

ELEANOR FARCHIONE[1]

vs.

R.J. REYNOLDS TOBACCO COMPANY & another.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff's decedent, Joseph Pritzky, began smoking cigarettes in 1961 when he was ten years old and quit when he was thirty-six years old.  He was over sixty years old when he was first diagnosed with lung cancer in 2014.  Several years later, he was diagnosed with another lung cancer, which led to his death in 2023.

In this lawsuit the plaintiff claims that the wrongful conduct of cigarette manufacturer R.J. Reynolds Tobacco Company[3]

_____

[1] Individually and as special personal representative of the estate of Joseph Pritzky.

[2] The Stop & Shop Company, LLC.

[3] R.J. Reynolds Tobacco Company is the corporate successor to Lorillard Tobacco Company and the Brown & Williamson Tobacco

and the Stop & Shop Company, LLC, caused Pritzky's lung cancers and ultimately his death.[4]  The complaint raises several counts including, as relevant to this appeal, breach of implied warranty against both defendants and negligence and civil conspiracy against Reynolds only.  These claims were tried to a jury over twenty-two days, after which the jury returned a verdict finding that (1) the defendants did not breach an implied warranty by manufacturing cigarettes or by selling them to Pritzky; (2) Reynolds was not negligent in marketing cigarettes to Pritzky when he was a minor; (3) Reynolds was negligent in distributing cigarettes to Pritzky and in failing to warn him of the health risks of cigarettes when he was a minor, but its negligence did not cause Pritzky's lung cancers; and (4) Pritzky did not reasonably rely to his detriment on a misrepresentation of material fact made further to a conspiracy between Reynolds and other tobacco companies or organizations.

The plaintiff now appeals from the judgment entered for the defendants on all claims, arguing that the judge made dozens of evidentiary errors during the course of the trial.  We conclude

---

Company.  For convenience we will refer to the three companies interchangeably as "Reynolds."

[4] The case was originally brought in 2017 by Pritzky on his own behalf.  Following his death in 2023, the special personal representative of his estate filed an amended complaint substituting herself as the plaintiff.

2

that most of these arguments are waived and, as to the remainder, that the plaintiff has failed to show either an abuse of discretion or prejudice entitling her to a new trial. Accordingly, we affirm.

1. Standard of review. We review the judge's evidentiary rulings for an abuse of discretion. See N.E. Physical Therapy Plus, Inc. v. Liberty Mut. Ins. Co., 466 Mass. 358, 363 (2013). This standard requires the plaintiff to show that the judge made a "clear error of judgment in weighing the factors relevant to the decision . . . such that the decision falls outside the range of reasonable alternatives" (quotation and citation omitted). L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014). In addition, to be entitled to a new trial, the plaintiff must show that the errors, if any, adversely affected her substantial rights. See DeJesus v. Yogel, 404 Mass. 44, 47-48 (1989). "[T]he substantial rights of a party are adversely affected when relevant evidence is erroneously excluded that, viewing the record in a commonsense way, could have made a material difference." Id. at 48.

2. Evidence related to negligent marketing claim. The majority of the plaintiff's arguments concern the judge's exclusion of evidence related to the negligent marketing claim. The plaintiff puts this evidence into three categories:

3

internal company documents, advertising on television shows, and portions of Pritzky's recorded deposition testimony.  We will address each in turn and then turn to the question of prejudice.

    a.  <u>Internal company documents</u>.  The plaintiff begins this part of her brief by listing seventeen documents that she claims the judge erroneously excluded.  She then fails, however, to offer any argument regarding most of those documents.  While she claims generally that the judge erred by excluding "many" documents "on the grounds that the terms used in the documents . . . were not explicitly defined to mean 'under 18,'" she fails to specify which of the documents in the list of seventeen fall into this category.[5]  We need discuss only those challenges that are individually addressed in the brief and deem the rest to be waived.  See Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019).

The plaintiff has also waived some challenges by failing to adequately address the substance of the judge's rulings.  The judge excluded three documents -- a 1974 marketing plan, a 1974

---

[5] The only record citations the plaintiff provides are to four pages of the record appendix, each containing four pages of the trial transcript.  But she does not explain which pages and rulings correspond to which document, nor does she address the specific grounds the judge gave for her rulings, including that one document referred to people aged "25 to 44" and another related to sales of cigarettes in States where the legal age to purchase was sixteen.

document concerning Reynolds's domestic operating goals, and a 1980 interoffice memorandum -- on the ground that they were "incomplete" because the plaintiff failed to submit an attachment. The plaintiff relegates her discussion of this ruling to a footnote and, even there, makes only a summary assertion that the attachment was relevant to only one of the three documents. Likewise, the plaintiff fails to grapple with the judge's reasons for excluding two 1963 letters from Grey Advertising to Reynolds and a 1966 letter from Reynolds to Grey Advertising.[6] These challenges are all waived. See Mass. R. A. P. 16 (a) (9) (A); Boston Edison Co. v. Massachusetts Water Resources Auth., 459 Mass. 724, 726 n.3 (2011) (deeming argument raised only in footnote to be waived).

Next, the plaintiff has failed to show that the judge abused her discretion in excluding a 1963 letter from an advertising agency to Reynolds. Attached to the letter was a photograph of "Little Ritchie," a child celebrity, being handed a cigarette by an adult. The judge excluded the letter as irrelevant, noting that the plaintiff offered nothing to show "that the people handing [the child] a cigarette had anything to

_____

[6] Although the plaintiff claims that the judge did not give her reasons, we can infer from the judge's extended discussion with counsel that she excluded the letters for lack of foundation.

5

do with [Reynolds]." The plaintiff argues that this was error because "there was no record of any reprimand from [Reynolds] in response to this letter" and Reynolds "actually continued to employ that same advertising agency after receipt of this letter." But the judge considered these arguments and concluded that the letter was still irrelevant. This was well within the range of reasonable alternatives. See L.L., 470 Mass. at 185 n.27.

The judge was also within her discretion to exclude a 1960 letter addressed to Wilson H. Ford, then a high school freshman, which stated, "[W]e are sending you our gift package of SPRING Cigarettes which we hope you will thoroughly enjoy." The judge observed that the letter has "no signature line" and "no letterhead" and that it is unclear whether it "was ever sent." Later in the trial, plaintiff's counsel sought to establish a foundation for the letter by asserting that he had "personally spoke[n] with . . . Ford . . ., and he tells me that he did, in fact, receive these free sample packs from [Reynolds]," and by offering an affidavit from Ford to that effect. The judge properly declined to admit the letter based on Ford's affidavit and counsel's statements, which were plainly hearsay. We are also unpersuaded by the plaintiff's assertion that she "laid the proper foundation through her expert historian who was familiar

6

with and had reviewed many of the director of research's letters -- including letters that were sent unsigned -- and who confirmed that the initials on the letter were for [Reynolds's] head of research."  The transcript, fairly read, reflects that this was not the argument that the plaintiff raised below.  In any event, even assuming the argument was preserved, the plaintiff offered nothing to show that the expert had any knowledge of whether the letter in question was sent to Ford.

The last document identified by the plaintiff is a 1964 internal company memorandum, which states that the Newport brand was advertised as a "fun cigarette" and successfully marketed to "youthful" and "immature" customers "according to plan."  The judge excluded this memorandum as cumulative of the testimony of the plaintiff's expert and because it was speculative to assume that "'youthful' and 'immature,' without more, meant under the age that people were allowed to buy cigarettes."  We discern no abuse of discretion.  The plaintiff's expert testified at length that a common theme of Reynolds's advertising was to portray cigarettes, including the Newport brand, as "young" and "fun." It was within the range of reasonable alternatives for the judge to conclude that the memorandum would not have added anything material to the expert's testimony.  See L.L., 470 Mass. at 185

7

n.27.  Furthermore, even assuming error, it was not prejudicial for the reasons stated below.

b.  Television advertisements.  The plaintiff's next set of challenges concerns the exclusion of evidence that Reynolds advertised its cigarettes on The Dick Van Dyke Show, The Flintstones, Bonanza, and The Beverly Hillbillies.  Regarding the evidence related to Bonanza, the plaintiff relegates her discussion of the judge's ruling to a footnote and offers little beyond a summary assertion that the judge erred.  Regarding the evidence related to The Beverly Hillbillies, the plaintiff does not discuss the judge's ruling at all.  These challenges are thus waived.  See Mass. R. A. P. 16 (a) (9) (A); Boston Edison Co., 459 Mass. at 726 n.3.

The judge excluded the advertisement that aired during The Dick Van Dyke Show on the ground that "[i]t was a primetime show" and there was nothing to "indicate that [the advertisement] was targeting children as opposed to targeting adults."  Similarly, the judge excluded the advertisement that aired during The Flintstones on the ground that "in those days" it "was an adult show," which also aired during "primetime."  We are hard-pressed to say that these rulings were outside the range of reasonable alternatives, where it is undisputed that both shows aired during primetime.  Indeed, one of the

8

plaintiff's own exhibits reflects that The Flintstones was advertised then as "[a]n adult comedy in cartoon form." In any event, even assuming error, it was not prejudicial for the reasons stated below.

c. Pritzky's deposition testimony. The plaintiff claims that the judge erred by excluding portions of Pritzky's deposition testimony describing the impact that Reynolds's advertising had on him as a child. This section of the plaintiff's brief identifies, in list form, numerous categories of evidence that she says were excluded, but contains no meaningful explanation of why the judge erred. These challenges are thus waived. See Mass. R. A. P. 16 (a) (9) (A).

d. Prejudice. Even were we to conclude that the judge made some isolated errors relating to the negligent marketing claim, the plaintiff has failed to show that any such errors affected her substantial rights. As reflected on the verdict slip, to prevail on her claim, the plaintiff had to prove not just that Reynolds was negligent, but also that its negligence caused Pritzky's lung cancers. The plaintiff does not explain how the excluded evidence "could have made a material difference" on the question of causation. DeJesus, 404 Mass. at 48. Pritzky testified in his deposition that the Newport advertisements he saw had "[n]othing" to do with his trying

9

Newport cigarettes; that he watched The Flintstones and The Beverly Hillbillies but did not remember cigarette advertisements being aired during those shows;[7] and that he did not start smoking because of any advertisements he saw. Furthermore, although the jury did not reach the question of causation with respect to the negligent marketing claim (because they found that Reynolds was not negligent), they did reach it with respect to the negligent distribution and negligent failure to warn claims and found that Reynolds's negligence did not cause Pritzky's cancers. Given that the judge gave one jury instruction on causation that applied to all three negligence claims, and "viewing the record in a commonsense way," id., we do not see how the excluded evidence could have materially affected the jury's verdict on the negligent marketing claim.[8] For at least these reasons, the plaintiff has failed to demonstrate prejudice.

3. Evidence related to negligent distribution claim. The plaintiff sought to present six witnesses who would all testify

_____

[7] Pritzky also testified that he watched The Dick Van Dyke Show and Bonanza, but he was not asked whether he saw cigarette advertisements during those shows.

[8] We note that the issue of causation was vigorously litigated at trial. The evidence presented included extensive testimony about Pritzky's strong family history of cancers, including among relatives who did not smoke.

about receiving cigarette samples from Reynolds when they were minors growing up in the neighborhoods around Pritzky's. The judge allowed the plaintiff to present three witnesses but excluded the rest as repetitive or cumulative.[9] The plaintiff argues that this was reversible error. We disagree. It is within a trial judge's discretion to "exclude witnesses whose testimony is cumulative, repetitive, or confusing." Commonwealth v. Durling, 406 Mass. 485, 495 (1990). We discern no abuse of discretion in the judge's finding that testimony from the other witnesses would be repetitive or cumulative, especially given its marginal relevance to whether Reynolds negligently distributed cigarettes to Pritzky himself. Furthermore, because the jury found on this claim that Reynolds was in fact negligent, the plaintiff was not prejudiced. We are unpersuaded by the plaintiff's assertion that the excluded testimony could have made a material difference on the jury's determination of causation.

The plaintiff also takes issue with the judge's restrictions on the testimony of the three witnesses that the

---

[9] The plaintiff incorrectly claims that the judge cut the number of witnesses from thirteen to three. While plaintiff's counsel identified thirteen potential witnesses, he told the judge that "it would not be the plaintiff['s] intention to call all of the potential witnesses." Later, counsel sought to offer six of the witnesses.

11

judge allowed.  It appears that many of these challenges are unpreserved, and in one instance it appears that the judge allowed the portion of testimony that the plaintiff claims was wrongly excluded.  In any event, these challenges are waived because the plaintiff merely identifies the excluded testimony in list form without explaining how the judge abused her discretion.  See Mass. R. A. P. 16 (a) (9) (A).

Likewise, the plaintiff fails to develop her challenge regarding Pritzky's deposition testimony that his brothers received cigarette samples when they were minors and that he often exchanged cigarettes with his brothers.  The judge excluded this testimony on the grounds that it was hearsay and cumulative.  In claiming that this was error, the plaintiff states only that the testimony was "admissible under the hearsay exception set out in G. L. c. 233, § 65."  That statute provides that "a declaration of a deceased person shall not be inadmissible in evidence as hearsay . . . if the court finds that it was made in good faith and upon the personal knowledge of the declarant."  G. L. c. 233, § 65.  Putting aside that the plaintiff did not cite this statute to the judge, the plaintiff does not address the judge's reasoning that the excluded testimony contained second-level hearsay statements made "without any basis of knowledge or foundation."  Nor does the

12

plaintiff explain why the judge abused her discretion in excluding the testimony as cumulative.  Thus, this challenge is also waived.  See Mass. R. A. P. 16 (a) (9) (A).

4.  Evidence related to conspiracy claim.  The plaintiff next claims that the judge erred by precluding the witnesses, including the plaintiff's expert, from using the word "conspiracy" during their testimony.  We take the plaintiff to be arguing that her expert should have been allowed to opine on whether Reynolds engaged in a conspiracy.  The judge determined, however, "that 'conspiracy' is a term of art that incorporates a legal definition which [she would] provide to the jury" and is "not something that is colloquial or up to an expert to tell the jury."  This was not an abuse of discretion.  See Silva v. Norfolk & Dedham Mut. Fire Ins. Co., 91 Mass. App. Ct. 413, 420 (2017) ("an opinion of law . . . is generally not a proper subject for expert testimony").  As the judge promised, she gave detailed instructions on the elements of civil conspiracy, which the jury were capable of deciding without the aid of an expert. See id. ("The test for determining whether a particular matter is a proper one for expert testimony is whether the testimony will assist the jury in understanding issues of fact beyond their common experience" [quotation & citation omitted]).

13

The plaintiff further argues that the judge erred by "repeatedly exclud[ing] evidence of the length and depth of the conspirators' denial campaign."  But again, the plaintiff merely identifies the excluded evidence in list form without explaining why the judge abused her discretion.  These arguments are thus waived.  See Mass. R. A. P. 16 (a) (9) (A).

5.  <u>Evidence related to breach of warranty claim</u>.  Finally, the plaintiff challenges the exclusion of evidence related to whether Reynolds had the ability to manufacture cigarettes with a safer design.  Her sole argument in support is that similar evidence has been admitted in other tobacco cases in Massachusetts.[10]  While this is a refrain throughout the plaintiff's brief, that similar evidence may have been admitted in other cases does not show that the judge abused her discretion in this case.  These arguments are thus waived

_____

[10] The plaintiff's record appendix includes exhibit lists and portions of trial transcripts from other cases.  It does not appear that the plaintiff provided these documents to the judge.

14

because of the plaintiff's failure again to grapple with the substance of the judge's rulings.  See Mass. R. A. P. 16 (a) (9) (A).[11]

Judgment affirmed.

By the Court (Meade, Shin & Tan, JJ.[12]),

Clerk

Entered:  August 6, 2025.

---

[11] To the extent we have not addressed any of the plaintiff's arguments, we see nothing in them that warrants overturning the judgment.

[12] The panelists are listed in order of seniority.